## KAY *v.* UNITED STATES.

No. 61.  Argued December 10, 13, 1937.—Decided January 31, 1938.

2

*Messrs. Frank R. Serri* and *W. S. Culbertson* for petitioner.

*Assistant Solicitor General Bell,* with whom *Solicitor General Reed, Assistant Attorney General McMahon,* and *Messrs. William W. Barron, Horace Russell, E. K. Neumann,* and *W. Marvin Smith* were on the brief, for the United States.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Petitioner was convicted of violations of § 8 (a) [1] and (e) [2] of the Home Owners' Loan Act of 1933. Act of

---

[1] Section 8 (a) of the Home Owners' Loan Act, 12 U. S. C. 1467 (a), is as follows:

"Sec. 8. (a) Whoever makes any statement, knowing it to be false, or whoever willfully overvalues any security, for the purpose of influencing in any way the action of the Home Owners' Loan Corporation or the Board or an association upon any application, advance, discount, purchase, or repurchase agreement, or loan, under this Act, or any extension thereof by renewal deferment, or action or otherwise, or the acceptance, release, or substitution of security therefor, shall be punished by a fine of not more than $5,000 or by imprisonment for not more than two years, or both."

[2] Section 8 (e) of the Act, 12 U. S. C. 1467 (e), as originally enacted by the Act of June 13, 1933, c. 64, 48 Stat. 134, was as follows:

"(e) No person, partnership, association, or corporation shall make any charge in connection with a loan by the Corporation or an exchange of bonds or cash advance under this Act except ordinary charges authorized and required by the Corporation for services actually rendered for examination and perfecting of title, appraisal, and like necessary services. Any person, partnership, association, or corporation violating the provisions of this subsection shall, upon conviction thereof, be fined not more than $10,000, or imprisoned not more than five years, or both."

By the Act of April 27, 1934, c. 168, § 12, 48 Stat. 643, 647, § 8 (e) was amended so as to read:

"(e) No person, partnership, association, or corporation shall, directly or indirectly, solicit, contract for, charge or receive, or attempt to solicit, contract for, charge or receive any fee, charge, or other consideration from any person applying to the Corporation for a loan, whether bond or cash except ordinary fees authorized and required by the Corporation for services actually rendered for examination and perfection of title, appraisal, and like necessary services. Any person, partnership, association, or corporation violating the provisions of this subsection shall, upon conviction thereof, be fined not more than $10,000, or imprisoned not more than five years or both."

4

June 13, 1933, c. 64, 48 Stat. 128, 134, amended by Act of April 27, 1934, c. 168, 48 Stat. 643, 647. 12 U. S. C., § 1467 (a) and (e). The Circuit Court of Appeals sustained the conviction, 89 F. (2d) 19, and because of the importance of the questions presented certiorari was granted. 301 U. S. 679.

The conviction was upon eight counts of the indictment, viz., counts 5 and 15 under § 8 (a) and counts 8, 12, 14, 20, 24 and 25 under § 8 (e). To count 12 petitioner had pleaded guilty but later was permitted to withdraw that plea, pleaded not guilty, and went to trial. On count 8, imposition of sentence was suspended and petitioner was placed upon probation. On the remaining seven counts, petitioner was sentenced to a year and a day in prison, the sentences to run concurrently.

The Circuit Court of Appeals refused to consider errors arising on the bill of exceptions, as it had not been settled and filed within the time permitted by Rule IX of the Criminal Appeals Rules. The court accordingly limited its consideration to the sufficiency of the indictment, entertaining and deciding the questions of the constitutional validity of the Home Owners' Loan Act and of the provisions of § 8 (a) and (e) in particular.

The Government contends that the convictions should be sustained, irrespective of questions of the validity of any part of the statute, upon the ground that, the sentences being concurrent, the judgment should be affirmed if good under any one of the counts. In that view, the Government submits that petitioner consented to the judgment on count 12. The point is that petitioner was permitted to withdraw her plea of guilty to that count although eleven days had intervened, while Rule II (4) of the Criminal Appeals Rules requires such a motion to be made within ten days. The Government argues that the provision of the rule is mandatory and hence the judgment, as one upon consent, should be

affirmed without consideration of the merits. Petitioner answers that the Government by going to trial is now estopped to raise the question and further that a plea of guilty does not prevent the defendant from challenging the sufficiency of the indictment. (2 Bishop on Criminal Procedure, 2d ed., § 795.) The point does not appear to have been raised either in the District Court or in the Court of Appeals and it is based solely upon the dates of certain entries in the criminal docket without any supporting proof. We are not disposed to deal with a question of that importance presented in this manner.

*First.—As to the counts under § 8 (a).*[3]—Counts 5 and 15, under that provision, charge that petitioner, being the holder of a second mortgage upon certain premises, in executing the consent to accept bonds of the Home Owners' Loan Corporation in full settlement, and for the purpose of influencing the action of the Corporation, knowingly and falsely stated that her claims were respectively in the sums of $590 and $650, whereas in fact they were respectively only in the sums of $285 and $150.

Petitioner argues that there is no allegation that a loan to the owner was made or approved, or that any payment was made to petitioner; that the second mortgagee's consent is temporary and may be withdrawn; that it is not under oath and that there is no warranty of the truth of the information given. Petitioner argues further that any statement in the consent of a second mortgagee as to the balance due cannot endanger or directly influence any loan made by the Corporation; that the second mortgagee is not an applicant and that the practice in such cases negatives reliance on the consent, as the essential factors are the value of the property, as to which the Corporation makes its appraisal, and the earning capacity of the owner. None of these arguments is impressive. It does not lie with one knowingly making

[3] See Note 1.

false statements with intent to mislead the officials of the Corporation to say that the statements were not influential or the information not important. There can be no question that Congress was entitled to require that the information be given in good faith and not falsely with intent to mislead. Whether or not the Corporation would act favorably on the loan is not a matter which concerns one seeking to deceive by false information. The case is not one of an action for damages but of criminal liability and actual damage is not an ingredient of the offense.

Petitioner's main argument is that the whole scheme of the statute is invalid; that Congress had no constitutional authority to create the Home Owners' Loan Corporation,—to provide for the conduct of a business enterprise of that character. There is no occasion to consider this broad question as petitioner is not entitled to raise it. When one undertakes to cheat the Government or to mislead its officers, or those acting under its authority, by false statements, he has no standing to assert that the operations of the Government in which the effort to cheat or mislead is made are without constitutional sanction.

We recently dealt with a similar contention that the false claims statute, Criminal Code, § 35, did not apply to a conspiracy to cheat the United States by false representations in connection with operations under a statute which this Court found to be unconstitutional. We said that such a construction was inadmissible. "It might as well be said that one could embezzle moneys in the United States Treasury with impunity if it turns out that they were collected in the course of invalid transactions. . . . Congress was entitled to protect the Government against those who would swindle it regardless of questions of constitutional authority as to the operations that the Government is conducting. Such questions cannot be raised by those who make false claims

against the Government." *United States* v. *Kapp,* 302 U. S. 214, 217–218; *Madden* v. *United States,* 80 F. (2d) 672. While the instant case is not one of conspiracy to obtain money from the United States, but one of false statements designed to mislead those acting under authority of the Government, the principle involved is the same. Apart from any question of the validity of the other provisions of the Home Owners' Loan Act, Congress was entitled to secure protection against false and misleading representations while the Act was being administered, and the separability provision of the Act (§ 9) is clearly applicable. *Utah Power Co.* v. *Pfost,* 286 U. S. 165, 184.

There is the further argument that the provision of § 8 (a), separately considered, offends the due process clause as being vague and uncertain. We find no merit in that contention. The statute defining the crime is sufficiently explicit.

*Second.—As to the counts under § 8 (e).*[4]—The Government points out that count 14 is based on the statute as it was originally enacted in 1933. That count charges that petitioner on or about April 1, 1934, made a contract with an applicant for a loan for the payment to petitioner of a certain sum for services in connection with the loan and that the contract was not for "an ordinary charge or fee authorized and required by the Home Owners' Loan Corporation for services actually rendered for examination and perfection of title, appraisal, and like necessary services."

Counts 12, 20, 24 and 25, under the statute as amended, charge that petitioner in or about June, July and September, 1934, made similar contracts for the payment of unauthorized charges.

It appears that the Board of Directors in January, 1934, specifically provided that "the ordinary charges author-

---

[4] See Note 2.

8.

ized and required" for services should consist of (1) an appraisal fee as approved by the Board, (2) a fee for a character report, (3) necessary recording and similar fees, (4) necessary charges for perfecting title in a sum not exceeding $75 in any case and larger necessary charges if approved by the Board, (5) necessary and usual fees for abstracts, examination of title, opinions, certificates of title or title insurance, (6) charges of attorneys or title companies for escrow services or closing loans, and (7) any other necessary charge for like necessary services as specifically approved by the Board.

Section 8 (e) is also separable from the other provisions of the statute. It is plainly designed to prevent the exploitation of applicants. It rests upon the same principle as that which underlies § 8 (a) as to false and misleading representations to the officials of the Corporation. Congress was entitled not only to prevent misapplication of the public funds and to protect the officials concerned from being misled, but also to protect those who sought loans from being imposed upon by extravagant or improper charges for services in connection with their applications. This would be in the interest "not only of themselves and their families but of the public." See *Yeiser* v. *Dysart*, 267 U. S. 540, 541; *Nebbia* v. *New York*, 291 U. S. 502, 535, 536. Authority to penalize such exploitation while the enterprise is being conducted cannot be regarded as dependent upon the validity of the general plan. That plan might or might not be assailed. If assailed, a long period might elapse before final decision. Meanwhile, the governmental operations go on, and public funds and public transactions require the protection which it was the aim of these penal provisions to secure, whatever might be the ultimate determination as to the validity of the enterprise. *United States* v. *Kapp*, *supra*.

As a separable provision, the validity of § 8 (e) is challenged as lacking the requisite definiteness under the

due process clause. Section 8 (e) as amended in 1934 omitted the words "in connection with a loan by the Corporation or an exchange of bonds or cash advance under this Act" which were in the original provision. But the context, in the amended section, sufficiently shows that the forbidden charges are those in connection with applications "for a loan, whether bond or cash." The resolution adopted by the Board of Directors sets forth the nature of the ordinary charges that "are authorized and required," and the power of Congress to provide for such action by the Board is not open to question. See *United States* v. *Grimaud,* 220 U. S. 506, 521; *United States* v. *Shreveport Grain Co.,* 287 U. S. 77, 85. The phrase "like necessary services" in the section describes services which are cognate to those mentioned in the preceding clause "for examination and perfection of title" and "appraisal." And the resolution of the Board, after stating the categories of authorized charges, provides for "any other necessary charge for like necessary services, as specifically approved by the Board of Directors." We think that the statute sets up an ascertainable standard and is "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." *United States ex rel. Handler* v. *Hill,* 90 F. (2d) 573, 574. Compare *Connally* v. *General Construction Co.,* 269 U. S. 385, 391; *Old Dearborn Co.* v. *Seagram-Distillers Corp.,* 299 U. S. 183, 196.

*Third.*—We have considered the objections to the indictment which were open in the absence of a bill of exceptions. The Circuit Court of Appeals rightly held that the bill of exceptions was not settled and filed in time under the rule. But its decision was rendered before our decision in *Ray* v. *United States,* 301 U. S. 158, construing Rule IV of the Criminal Appeals Rules. See, also, *Forte* v. *United States,* 302 U. S. 220. That rule gives to the Circuit Court of Appeals full supervision and control of the proceedings on appeal, "including the proceed-

ings relating to the preparation of the record on appeal."
The appellate court, in the exercise of its sound discretion,
has authority to provide for the correction of any miscar-
riage of justice in connection with any action of the trial
judge relating to the settlement and filing of a bill of
exceptions.

As the Circuit Court of Appeals may have proceeded
in this case upon the assumption that it had no power to
approve the settlement and filing of the bill of excep-
tions and to pass upon the rulings it disclosed, its judg-
ment will be vacated and the cause will be remanded so
that the appellate court may be free to exercise its
discretion in that relation.

*Judgment vacated.*

MR. JUSTICE CARDOZO took no part in the consideration
and decision of this case.