# UNITED STATES v. SCHNEIDER
### (two cases).
### Nos. 3, 463.

District Court, E. D. Wisconsin.
June 15, 1942.

B. J. Husting, U. S. Dist. Atty., of Milwaukee, Wis., for plaintiff.

A. W. Richter, of Milwaukee, Wis., for defendant.

DUFFY, District Judge.

In No. 463 Criminal Q, the defendant Joseph Schneider (also known as Joel Schneider and Jimmy Randal) is charged with violating § 27, Emergency Relief Appropriations Act, Fiscal Year 1941, Act of June 26, 1940, C. 432, 54 Stat. 611, 623, 15 U.S.C.A. §§ 721–728. The first count charges that the defendant did knowingly, and with intent to defraud the United States, make a false statement in writing in connection with an application for employment under the appropriations provided in the Emergency Relief Appropriation Act, Fiscal Year 1941, in that then being employed by the Works Progress Administration, and in order to continue said employment and receive compensation therefor out of the funds so appropriated, said defendant did knowingly and fraudulently, on June 26, 1940, make and subscribe a statement in writing, which is set forth in detail. Included in such statement the said Schneider stated he was not a Communist, which statement is charged to be false in that the defendant then and there was a Communist.

The second count charges that the defendant on the 5th day of August, 1940, knowingly, and with intent to defraud the United States for his own benefit, did divert a portion of the funds appropriated by the Emergency Relief Appropriation Act, Fiscal Year 1941, in that being employed by the Works Progress Administration and not being entitled to said employment or any portion of said fund, by reason of the fact that he was then and there a Communist, he did receive out of said funds the sum of $41.40.

The third count is similar to the first count, except that it refers to a sworn statement dated March 5, 1941.

In No. 3 Criminal R, defendant is charged with violating § 80, Title 18, U.S.C.A. The first count alleges that on June 26, 1940, the defendant did knowingly and wilfully make a false statement in writing in a matter within the jurisdiction of the Federal Works Agency, Works Progress Administration of the United States, in that on said date, while being employed by the Works Progress Administration, in order to continue said employment and receive compensation therefor, he did make and subscribe a false statement which is set forth in detail in the indictment. Included therein was a statement that the defendant was not a Communist, which statement is alleged to be false in that the defendant then and there was a Communist.

The second count is similar to the first count, except that it refers to a statement under date of March 5, 1941.

The matter before the court is the determination of the motions of the defendant to quash the various counts in each indictment.

We shall first consider the indictment in No. 463 Criminal Q. Section 15(f) of the Emergency Relief Appropriation Act, Fiscal Year 1941, provides, in part: "No alien, no Communist, and no member of any Nazi Bund Organization shall be given employment or continued in employment on any work project prosecuted under the appropriations contained in this joint resolution

and no part of the money appropriated in this joint resolution shall be available to pay any person who has not made or who does not make affidavit * * * to the effect that he is not a Communist * * * such affidavit to be considered prima facie evidence * * * that he is not a Communist * * *."

Section 27 of said act provides, in part:

"Any person who knowingly and with intent to defraud the United States makes any false statement in connection with any application for any work project, employment, or relief aid under the appropriations in this joint resolution, or diverts, * * * for the benefit of any person or persons not entitled thereto, any portion of such appropriations, * * * shall be deemed guilty of a felony * * *. The provisions of this section shall be in addition to, and not in substitution for, any other provisions of existing law, or of this joint resolution."

It will be noted that § 15 (f) of the act provides: "No alien, no Communist, and no member of any Nazi Bund Organization shall be given employment * * *." It does not limit the restriction to a "member of the Communist Party". The words used are "no Communist" shall be employed or continued in employment.

Section 17 (b) of the act provides: "No portion of the appropriation made under this joint resolution shall be used to pay any compensation to any person who advocates, or who is a member of an organization that advocates, the overthrow of the Government of the United States." The usual phrase, "by force and violence", is missing. This provision is broad enough to exclude those who might advocate a change, by lawful means, in the form of the government of the United States.

■ The purpose of the relief act was to alleviate human suffering throughout the United States. There is no necessary or logical connection between the political or social beliefs of a person and his distress.

■ Possibly Congress had in mind excluding persons who advocate the overthrow of our form of government by force and violence, and also those who belonged to organizations based upon such principles. But Congress did not say so. As the language stands, there was an arbitrary and illegal classification outside the purposes of the act. There is no separability clause in the act in question. A prosecution under the provisions of this act should not be sus-

tained. The motion of the defendant to quash Counts Nos. 1, 2, and 3 of No. 463 Criminal Q will be granted.

■ We will now consider the indictment in No. 3 Criminal R, which is brought under the False Claims Statute. Section 80 Title 18 U.S.C.A. (Criminal Code, Sec. 35 (a)), is the section penalizing the making of false claims against the United States. This section reads, in part: "* * * or whoever shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or used any false * * * affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry in any matter within the jurisdiction of any department or agency of the United States * * * shall be fined, * * *" etc. Under the section just quoted it is not necessary to set forth that the government suffered any financial loss. United States v. Goldsmith, 2 Cir., 108 F.2d 917, certiorari denied 309 U.S. 678, 60 S.Ct. 715, 84 L.Ed. 1022. This section is not limited to actual claims filed against the government. Spivey v. United States, 5 Cir., 109 F.2d 181, certiorari denied 310 U.S. 631, 60 S.Ct. 1079, 84 L.Ed. 1401.

In the case of United States v. Kapp, 302 U.S. 214, 58 S.Ct. 182, 82 L.Ed. 205, the Supreme Court considered an indictment brought under this section, in which it was claimed that false statements were made to the Secretary of Agriculture in order to secure benefit payments under the Agricultural Adjustment Act of May 12, 1933, 48 Stat. 31, 7 U.S.C.A. § 601 et seq. The provisions of that statute had been declared unconstitutional in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. Defendants therefore claimed that no prosecution could be had under the False Claims Statute, in as much as the false statement was made under the provisions of the act which had been held unconstitutional. The court, in commenting on the defendants' contention, stated at page 217 of 302 U.S., at page 184 of 58 S.Ct., 82 L.Ed. 205:

"* * * The substance of the decision thus appears to be that the false claims statute does not apply to an attempt to defraud the United States by obtaining the approval of claims and benefit payments through false representations, if the statute provid-

ing for such claims and payments is found to be invalid. * * *

"Such a construction is inadmissible. It might as well be said that one could embezzle moneys in the United States Treasury with impunity if it turns out that they were collected in the course of invalid transactions. * * *"

The court further stated at page 218 of 302 U.S., at page 184 of 58 S.Ct. 82 L.Ed. 205:

"* * * It is cheating the government at which the statute aims and Congress was entitled to protect the government against those who would swindle it regardless of questions of constitutional authority as to the operations that the government is conducting. Such questions cannot be raised by those who make false claims against the government. * * *"

In Kay v. United States, 303 U.S. 1, 58 S. Ct. 468, 82 L.Ed. 607, the defendant had been convicted of violations of provisions of the Home Owners' Loan Act of 1933, 12 U.S.C.A. § 1461 et seq. The court again announced at page 6 of 303 U.S., at page 471 of 58 S.Ct., 82 L.Ed. 607, the principle that when one undertakes to cheat the government or to mislead those acting under its authority, by false statements, he has no standing to assert that the operations of the government, in which the effort to cheat or mislead are made, are without constitutional sanction. The court further stated at page 6 of 303 U.S., at page 471 of 58 S.Ct., 82 L.Ed. 607: "* * * There can be no question that Congress was entitled to require that the information be given in good faith and not falsely with intent to mislead. Whether or not the Corporation would act favorably on the loan is not a matter which concerns one seeking to deceive by false information. The case is not one of an action for damages but of criminal liability, and actual damage is not an ingredient of the offense." This case might be authority to sustain a prosecution as attempted in No. 463 Criminal Q, had there been a separability clause in the Emergency Relief Appropriation Act, Fiscal Year 1941.

There is no sanction under the law for a Communist or anyone else to submit a false statement to any department or agency of the United States in a matter within its jurisdiction. If the defendant thought that the Congress had encroached upon his constitutional rights, he need not have answered the question. But the sovereign does have the power to demand honesty and truthfulness of a citizen when he is dealing with his government. The defendant is being tried not because it is alleged he was a Communist, but because it is alleged that he submitted a false affidavit to the government.

Defendant contends that the definitions of "Communist" are so many and so wide that the term is indefinite. But this is a burden that must be assumed by the government in proving its case. Suppose, for the sake of argument, that the government in this case could prove that the defendant was a member of the Communist Party of America at the time he made the affidavit. Certainly he would be classified as a Communist if he were a member of the Communist Party. The fact that there may be many other people who could come under some definition of Communist, but who are not members of the Communist Party, does not change the situation.

Congress had the right to demand that the information in question be obtained. Whether Congress could properly employ that information as the basis for withholding benefits is a matter with which we are not concerned in a prosecution under the False Claims Statute.

The motion of the defendant to quash Counts Nos. 1 and 2 in the indictment in No. 3 Criminal R must be denied.