HUMBLE OIL & REFINING CO. v.
UNITED STATES.

MOSELEY v. UNITED STATES.

Nos. 4419, 4420.

United States Court of Appeals
Tenth Circuit.

July 31, 1952.

Rehearing Denied Oct. 6, 1952.

Nelson Jones, Houston, Tex., G. T. Hanners, Lovington, N. M., and Hiram M. Dow, Roswell, N. M. (U. M. Rose, Hobbs, N. M., on the brief), for appellants.

Maurice Sanchez, U. S. Atty., Albuquerque (James M. McInerney, Asst. Atty. Gen., James J. Sullivan and James W. Knapp, Attorneys, United States Department of Justice, Washington, D. C., on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

This is an appeal from a judgment of conviction following a jury's verdict on nine counts in an indictment, charging appellants with violation of the Connally Act, 15 U.S.-C.A. § 715 et seq. There were two indictments which were consolidated for trial. Separate reference to the indictments is unnecessary. Count one charged a conspiracy to violate the act and the remaining numerous counts charged substantive vio-

754

lations thereof. Appellants were acquitted of the conspiracy charge and all of the substantive offenses save those charged in counts eighteen to twenty-six, inclusive. All of these counts in substance charged that on the dates set forth therein appellants knowingly and unlawfully failed and omitted to make and keep complete and accurate daily records of the oil produced and delivered from their wells described in each count of the indictment.

The declared purpose of the Connally Act, § 715 is to protect interstate and foreign commerce from the diversion and obstruction of, and the burden and harmful effect upon, such commerce caused by contraband oil and to encourage the conservation of deposits of crude oil within the United States. Contraband oil is defined as being petroleum which, or any part thereof, was produced, transported, or withdrawn from storage in excess of the amounts permitted to be produced, transported, or withdrawn from storage under the laws of the state or under any regulation or order prescribed thereunder by any board, commission, officer, or other duly authorized agent of such state, or any of the products of such petroleum.

§ 715d empowers the President to prescribe such regulations as he may find necessary or appropriate for the enforcement of the act, including but not limited to regulations requiring reports, maps, affidavits and other documents relating to the production, storage, refining, processing, transporting, or handling of petroleum products and providing for the keeping of books and records and for the inspection of such books and records.

Pursuant to statutory authority, Regulation 30 C.F.R. § 302 was promulgated. It designated that part of the State of New Mexico comprising Lea and Eddy Counties as being covered by the promulgated regulations.[1] § 302.6 required the keeping of accurate and complete records with respect to production, refining, processing, manufacturing, transporting, withdrawing or otherwise handling petroleum or petroleum products in the designated area. The data required to be furnished related to the location of the producing properties, the number and location of wells thereon, the allowable production from each property and well, daily production in barrels of petroleum produced from each lease and well, the amount of petroleum consumed upon each property daily, and a record of all deliveries of petroleum or petroleum products, showing the names and places of business of all persons to whom such products were delivered, as well as other information. Wilfully and knowingly failing to comply with the requirements of these regulations was made a criminal offense.

New Mexico has enacted a comprehensive oil conservation law for the prevention of waste of oil and gas and to protect correlative rights therein.[2] The act created the Oil Conservation Commission, which was given jurisdiction and authority to enforce the provisions of the act. It was empowered to regulate the production of crude petroleum so as to prevent waste by over production. Pursuant to the provision of the act, the Commission from time to time issued general proration orders, fixing the total allowable for the state as a whole. It also by regulations fixed the allowable for individual leases and wells, including those of the appellant, the Humble Oil and Refining Company. Monthly allowables were fixed for the production of oil from the wells of appellant company during all the time involved in the counts of the indictment, on which appellant was found guilty.

At the trial, the Government introduced the general proration orders and also the specific proration orders applicable to Humble's production alone. Appellant filed a motion to suppress all these proration orders on the ground that they were void. The court overruled the motion as to the general orders, but sustained it as to the specific orders, fixing the allowable for appellant's wells during the time in question, on the ground that these orders were issued without giving notice, as required by statute, and on the further ground that the Commission itself did not make these orders but delegated its duty and responsibility to C. G.

1. The production in question lies within this area.

2. § 69–202 et seq., N.M.S.A.1941 Comp.

Staley, Chairman of the Engineers Sub-Committee of the Lea County Operators.

It may be that because of the manner in which these individual proration orders were promulgated they were unenforceable and that appellant could in a proper proceeding have successfully challenged them and have had them set aside. But it does not follow therefrom that they were incompetent in considering whether appellant was guilty of violating the Connally Act and regulations promulgated thereunder as will be pointed out more specifically hereinafter. For the purpose of this opinion, however, it may be conceded that the court's conclusion as to the validity of these specific proration orders was correct.

■ It is our conclusion that the Connally Act applies only to those states which have in effect proration statutes, having for their purpose the prevention of waste of oil and gas resources, the encouragement of the conservation of oil and gas deposits, the protection of correlative rights of individual owners in a common source of supply, and are engaged in the administration thereof. New Mexico has enacted and has in full force a valid comprehensive oil conservation law. The act created the Oil Conservation Commission, which was given jurisdiction and powers to administer the law. The Commission was set up and was and is functioning and its validity is not in question. It has from time to time issued general proration orders, fixing the total allowable for the state. The validity of some of the general proration orders in effect, during the time involved in the counts on which appellant was convicted, was upheld by the trial court and these orders were received in evidence. In effect appellant concedes that at least some of the general orders during the time in question were valid.[3]

We are dealing here with a broad remedial statute, the New Mexico Conservation Law. The Connally Act was passed to implement it and aid the state in the administration of its conservation law. Since New Mexico had a valid conservation law, a validly constituted board engaged in administering the law, and at least valid general proration orders in effect, New Mexico was a state in which conservation and proration were an established policy and by its specific provisions the Connally Act applied to New Mexico.

■ To be guilty of a violation of the Connally Act, it was not necessary to show that appellant was producing excess oil or that it was capable of doing so. It was not charged with the production or transportation of "hot" oil. It was charged with the offense of keeping false records in violation of the regulations promulgated under the Connally Act. If it were conceded that appellant's total production was incapable of violating any proration order in New Mexico, it would still be required to keep correct records under the Connally Act, under our conclusion that the act applied to New Mexico.

As stated in the act, its purpose was to protect commerce from the effects of contraband oil and *to encourage the conservation of deposits of crude oil situated within the United States.*[4] To aid the state in its endeavors to conserve and protect oil deposits under its laws, it was entitled to correct information with respect to the production from all wells in areas where the Connally Act applied. It was entitled to this information for the further purpose of protecting correlative rights in a pool. One of the objects of the New Mexico law, protection of correlative rights, has a relation to conservation.

■ But there is yet another reason why we think the judgment must be affirmed. Assuming as we have for the purpose of the opinion that the court's ruling with respect to the individual proration orders was correct, the fact remains that appellant did not challenge them. During all the time in question, it treated them as binding on it and purported to comply therewith and with the Connally Act. It kept all records re-

3. Appellant in its brief states: "During the period covered by the indictment, only three statewide orders were issued after notice and hearing. Except for the or-

ders for February, March and April, 1950, all statewide orders here involved were issued without notice or hearing."

4. Emphasis supplied.

quired by the Connally Act and thus submitted itself to the jurisdiction of the Act, but according to the verdict of the jury and the judgment of the court it did not keep correct records but falsified its records. It was only when it was charged with the offense of keeping false records under the Connally Act that it undertook to defend on the ground that since there was no valid proration orders in effect as to it, it was not required to keep records and could, therefore, not be guilty of the offense charged.

While the precise question under the Connally Act seems not to have arisen before, there are a number of cases in point under similar situations, holding that where one submits himself to an act or a regulation he must comply therewith and that when charged with a violation of a duty thereunder may not defend on the ground that the act is unconstitutional or the regulations are void or that the board chosen to administer it is not a lawful board or even that he was not required to appear and give answers or keep records. It has generally been held that as long as a department or agency has colorable authority to do what it is doing, the constitutionality of the statute or order requiring the keeping of records, the furnishing of information, or the giving of answers, is immaterial and such infirmity may not be relied upon as a defense for a specific violation thereof.

In United States v. Meyer, 2 Cir., 140 F.2d 652, the President by executive order authorized military commanders to prescribe areas from which any person might be excluded. Pursuant thereto the commanding general, by proclamation, established a military area, set up rules and regulations providing standards for determining the question of exclusion therefrom, and set up an exclusion board to administer the rules and regulations. Meyer was called to appear before the board. He gave false answers to questions asked him by the board and was thereafter charged criminally for such false answers. He defended on the ground that the board was not a validly constituted board and, therefore, had no authority to conduct the hearing. Concerning this the court said: "It is unnecessary for us to consider whether or not the Ex-clusion Board was in fact a validly constituted tribunal, as we think defendant was not in a position to raise the question in this proceeding. The courts have consistently held that the unconstitutionality of the operation or proceeding in relation to which a deception was practised is not a defense in a prosecution for such deception."

In United States v. Kapp, 302 U. S. 214, 58 S.Ct. 182, 82 L.Ed. 205, a conspiracy was charged against the United States in making false statements to the Secretary of Agriculture under the Agriculture Adjustment Act, 7 U.S.C.A. § 601 et seq. and Regulations promulgated thereunder. When charged criminally, the defense was that the Act and the Regulations were void and unconstitutional and that, therefore, the acts charged could not constitute an offense. But the Supreme Court held that those who made false representations are estopped to defend upon the ground that the statute under which they arise has been declared unconstitutional.

In Kay v. United States, 303 U.S. 1, 58 S. Ct. 468, 471, 82 L.Ed. 607, Kay was charged with having made false representations in an application for a home loan. His defense was that the Home Owners' Loan Act, 12 U.S.C.A. § 1461 et seq. was unconstitutional and that, therefore, he could be guilty of no offense thereunder. The Supreme Court brushed this contention aside and held that "When one undertakes to cheat the Government or to mislead its officers, or those acting under its authority, by false statements, he has no standing to assert that the operations of the Government in which the effort to cheat or mislead is made are without constitutional sanction." And further the court said: "Apart from any question of the validity of the other provisions of the Home Owners' Loan Act, Congress was entitled to secure protection against false and misleading representations while the act was being administered, * * *."

Such cases as Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288, Utah Power & Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791, United States v. George, 228 U.S. 14, 33 S. Ct. 412, 57 L.Ed. 712, and Dunn v. United States, 10 Cir., 98 F.2d 119, upon which ap-

pellant relies, are not decisive. The Morgan case was a civil action directly challenging the validity of a regulation of the Secretary of Agriculture. Utah Power and Light Company also was a civil action in which the validity of a regulation of a Government Department was not even involved. United States v. George merely holds that one is not guilty of perjury by making a false affidavit when the administrative agency requiring the affidavit had no statutory authority to require the same.

Such cases as Dunn v. United States, 98 F.2d 119, by our court, involved the federal liquor enforcement law. 27 U.S.C.A. § 223(a). That act makes it a federal offense for one to transport liquor into a state having a prohibitory law, conforming to the standards laid down in the federal act. By specific provision of the federal law, it has no force and effect until a state brings its liquor laws into compliance with the provisions of the federal act. All that was held in those cases was that until a state brings its prohibitory laws into compliance with the federal act it is no federal offense to transport liquor therein.

It may be conceded without so deciding that appellant could have in a proper proceeding set these proration orders aside, or even could have refused to set up and keep records, because of their claimed invalidity but when it submitted itself to the provisions of the Connally Act and the Regulations promulgated thereunder, set up its books and kept records, the Government was entitled to correct records and honest answers, and, when charged with a criminal violation of the regulations requiring it to keep proper and correct records, it could not defend on the ground that the regulations promulgated by a lawful commission set up under a legal proration statute were unenforceable because of irregularities in their promulgation.

Affirmed.

MURRAH and PICKETT, Circuit Judges (concurring specially).

Judge PICKETT and I concur in the affirmance of the judgment and to much of the reasoning in Judge HUXMAN'S opin-

ion. We prefer, however, to rest our conclusion squarely on the premise that New Mexico, having in force a valid conservation law, under which it has established a proration system for the production and marketing of petroleum products, the Federal Board is empowered to designate areas as to which the Federal Act shall be applicable, and to prescribe appropriate regulations for keeping records of the production of wells within a designated area.

The establishment of a proration system in New Mexico invoked Federal jurisdiction to prohibit interstate transportation of oil produced, transported or withdrawn in violation of state orders, rules or regulations. And, in the exercise of that jurisdiction, the Federal Board was undoubtedly empowered to promulgate all needful regulations, including the keeping of accurate records of wells subject to proration under state law.

This being so, the Federal regulations in question were valid and applicable, even though some of the state orders fixing the allowable production of wells in the designated area may be invalid for lack of compliance with state procedural requirements.