BARTLETT AND COMPANY, GRAIN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 7837.

United States Court of Appeals Tenth Circuit.

Dec. 17, 1965.

Rehearing Denied Dec. 17, 1965.

Charles B. Blackmar, Kansas City, Mo. (Robert E. Russell, Topeka, Kan., and Donald H. Loudon, Kansas City, Mo., with him on brief), for appellant.

James R. Ward, Topeka, Kan. (Newell A. George, U. S. Atty., and Elmer Hoge, Shawnee Mission, Kan., with him on brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and BREITENSTEIN, Circuit Judges.

MURRAH, Chief Judge.

Appellant appeals from a judgment and sentence on a jury verdict for violation of § 714m(a), Title 15, U.S.C., which provides in material part that "(a) [w]hoever makes any statement knowing it to be false * * * for the purpose of influencing in any way the action of the Commodity Credit Corporation or for purposes of obtaining for himself or another money or anything of value * * * shall be punished * * *".

The one count indictment, couched in one prolix sentence, charged in substance that the defendants. Kenneth E. Krause [1] and Bartlett and Company, Grain, did "make and cause to be made a statement knowing it to be false for the purpose of influencing the action of CCC [Commodity Credit Corporation], in that at said time and place and for the purpose of obtaining for Bartlett and Company, Grain a truck receiving charge allowance of $542.99 in computing final settlement

---

[1]. Kenneth E. Krause, manager of Bartlett and Company, Grain's warehouse at Junction City, Kansas, was acquitted by the jury verdict.

on the purchase by Bartlett and Company, Grain of approximately 8,688 bushels of rye from CCC, which allowance would only have been lawfully earned and due the defendants had said rye been unloaded into and come to rest in the defendants' warehouse at Junction City, Kansas, the defendants * * * did knowingly, wilfully, unlawfully and feloniously file and cause to be filed with the Clay Agricultural Stabilization County Committee of Clay County, Kansas, a statement that grain * * * was unloaded and came to rest in the warehouse at Junction City, Kansas, operated by said defendants * * * when in truth and in fact said defendants then and there knew that said grain was not unloaded into and did not come to rest in said warehouse at Junction City, Kansas."

Concisely stated, the indictment alleges that the defendants knowingly made a false statement for the purpose of influencing the CCC to pay the defendant, Bartlett and Company, Grain an "in store or truck receiving allowance" for purchased rye, which "allowance" would be lawfully earned and due only if the grain were unloaded at Bartlett and Company's warehouse at Junction City, Kansas; that the requisite statement filed with the appropriate county committee by Krause represented that the grain was unloaded and came to rest at the Junction City, Kansas, warehouse when in truth and in fact defendants knew it was not unloaded and did not come to rest there.

The first complaint is that the indictment fails to state an offense under § 714m(a). As we understand the contention, it is to the effect that in order to show that the statement materially, hence criminally, influenced CCC action, the indictment must not only allege the conditions under which the receiving charge would be earned and payable, it must also allege the authority or understanding by reason of which it would be earned and payable. The argument is that unless defendants are informed of the underlying authority by which the truck receiving charge would be lawfully

earned they cannot be informed in what way the statement was false so as to understand the nature of the offense charged.

■ Materiality of the statement is, to be sure, an essential element of the offense charged. Indeed, it is the very essence of the offense. See Gonzales v. United States, 10 Cir., 286 F.2d 118; Meer v. United States, 10 Cir., 235 F.2d 65; Kovens v. United States, 5 Cir., 338 F.2d 611; Brethauer v. United States, 8 Cir., 333 F.2d 302.

■ We agree that authority to pay is prerequisite to inducement to pay. But, we think it sufficient to state, as does the indictment, that the defendants knowingly made a false statement for the purpose of inducing the CCC to pay an "in store" or "truck receiving allowance" which would be lawfully due and earned only if the grain were unloaded at Bartlett's warehouse in Junction City, Kansas. The underlying authority for the payment of the allowance in the circumstances of the case is a matter of proof or legal cognizance. The indictment not only states the essential elements of the offense, it particularizes the operative facts so as to enable the defense to meet the charges and plead the judgment in bar. See Mims v. United States, 10 Cir., 332 F.2d 944.

In the opening statement to the jury counsel for the government stated that it was the "contention of the government that in order to obtain this allowance * * * the warehouseman was required to furnish a certification that the grain was unloaded and came to rest in the warehouse * * * adjacent or contiguous to Clay County; * * * that Kenneth E. Krause and Bartlett and Company, Grain knew that the statements contained in the certification were untrue and that they were untrue when they made them."

Apparently to prove the underlying authority for payment of the in store or truck receiving allowance, the government introduced the Uniform Grain Stor-

age Agreement between the government and Bartlett, by the terms of which the warehouseman agreed to store grain owned by the government or in possession of one of its lending agencies. It provides for payment of in store warehouse charges in accordance with the applicable schedule of rates, which in this case was 6¼¢ per bushel for rye. In a published monthly sales list in the Federal Registry (24 F.R. 5690), the government offered for sale "bulk rye for domestic unrestricted use, market price basis in store \* \* \*". A footnote stated that "in those counties in which grain is stored in CCC bin sites delivery will be made F.O.B. buyer's conveyance at bin site and without additional cost; sales will also be made in store approved warehouses in such county and adjacent counties at the same price \* \* \*".

As we interpret this documentary authority, the in store or truck receiving allowance claimed in this case was lawfully earned and payable if and only if the grain were delivered "in store" at Bartlett's Junction City warehouse, and was not lawfully earned or payable if the grain were delivered "F.O.B. bin site". If, therefore, the grain were delivered F.O.B. bin site, there was no authority for the payment of an in store or truck receiving allowance, and the false statement was incapable of influencing the government to pay that which was unauthorized. It was thus incumbent upon the government to prove not only an agreement to pay the allowance if the purchased rye were delivered at Junction City, but that it was an authorized transaction.

There was proof that an official of Bartlett called the ASC office in Manhatten, Kansas, to inquire where rye was located in the State of Kansas in "bin sites" and informed the ASC representative that he was "only interested in purchasing rye from bin sites where they would be entitled to a refund of the truck receiving charge which would be in those counties where Bartlett had elevators or in counties where \* \* \*

they had elevators that were adjacent to counties where the bin sites were located"; and that "he would be interested in rye in Clay County, cause they had an elevator in Junction City in Geary County, which was adjacent to Clay County". Thereafter, a Mr. Krause in Junction City called the Clay County ASC office manager to inquire concerning the purchase of the rye. He stated that he previously purchased some rye in Dickinson County for $1.02 per bushel and received an in store credit of 6¼¢ per bushel, and he felt he "also could purchase our rye for this price". The details of the transaction were then discussed, and the ASC office manager informed Mr. Krause that the buying price was $1.03 per bushel and that an in store credit of 6¼¢ per bushel would be paid if earned after delivery in store and final settlement. The record shows without dispute that Bartlett did purchase quantities of rye grain from the CCC. The executed prescribed form of "sales record" shows that the rye was located in Clay County, that it was sold to Bartlett and Company, Grain at Junction City, Kansas, and that the delivery price basis was "F.O.B." not "delivery in store". The confirmation of sale also on a prescribed form showed the delivery basis of the grain at "F.O.B. conveyance at bin site", Clay Center. There was other proof that the rye was delivered into Bartlett's hired trucks at Clay Center. There was proof and it is apparently conceded that all of the grain was not unloaded at Junction City and that some of it was transported directly to Bartlett's River Rail elevator in Wyandotte County, Kansas.

The government introduced a statement executed by Krause, manager of the Bartlett elevator at Junction City, certifying that the enumerated lots of grain were "unloaded into and came to rest in my warehouse". When the truck receiving allowance was not promptly remitted, Bartlett inquired both by telephone and in writing. When they were told there was some question as to whether the allowance had been earned,

Bartlett's manager replied that he had Junction City scales tickets for the grain.

There was also evidence that some of the Junction City scales tickets were fabricated to show that the rye had been unloaded in Junction City, Kansas, and that the truckers were paid for a haul from Junction City, not from the bin sites. The ledgers at River Rail for the incoming rye showed the origin of the rye as "J.C." instead of the government bin sites. This evidence was offered and admitted apparently to show that Bartlett knew and understood the conditions under which the allowance was payable and manipulated their records accordingly.

At the conclusion of the government's evidence and again at the conclusion of all of the evidence, the appellants moved for acquittal on the theory that the government had not proved any authority or agreement for payment of the truck receiving charge, and the statement made, even if false, was therefore incapable of influencing the CCC to pay any charges whatsoever.

Appellant requested the Court to instruct the jury that "If you find that the transaction as set out in the *conformation* of sale which has been introduced into evidence was one in which there is no provision for payment of a truck receiving charge, then the statement as charged in the indictment is not a material statement and you must find the defendants not guilty. * * *" This point was argued before submission of the case and on motion for new trial.

The trial court "couldn't believe * * that all of the manipulations that took place on the part of these defendants wouldn't happen if they hadn't been well aware of what the law was, and of what they had to do to get this money and what they undertook to do to get it"; and further that "evidence in this case is that representatives of this company knew that they had to unload this at a warehouse either in the county * * * where they got it from or in the adjoining county."

The Court told the jury that "under the evidence offered and submitted in this case * * * under the Uniform Grain Storage Agreement * * * and at the time the purchase agreement was made * * * the defendants knew and understood that if Bartlett and Company, Grain was entitled to receive a truck receiving charge * * * [it] was required to unload the rye delivered to it by the ASC and bring it to rest in an approved warehouse in Clay County or in a county adjacent thereto". The Court went on to state that "The prosecution further claims that Bartlett and Company, Grain agreed to buy and take delivery from Clay County A.S.C. by truck and thereafter unload the rye at the Bartlett and Company, Grain elevator in Junction City, which is located in adjacent Geary County, so that Bartlett and Company, Grain could be allowed the truck receiving charge when final settlement was made for the rye after Defendants furnished a signed statement that the grain was unloaded into and had come to rest in the Junction City warehouse".

Having thus stated the government's theory, the Court then told the jury "Before you can find the defendants or either of them guilty, you must find beyond a reasonable doubt that such A.S.C. Office and that such defendants at that time knew and understood that the rye, delivered by Clay County A.S.C. to the trucks employed by Bartlett and Company, Grain must be unloaded and come to rest in an approved warehouse of Bartlett and Company, Grain in a county adjacent to Clay County before Bartlett and Company, Grain could be allowed the truck receiving charge of 6¼ cents per bushel."

It is thus undeniably plain that the case was tried and submitted to the jury on the theory of an agreement, express or implied, between CCC and Bartlett under which the truck receiving allowance would be lawfully earned and payable if and only if the rye were unloaded at Bartlett's approved warehouse in Junction City, and a false statement that it

was so unloaded was capable of influencing the government to pay the truck receiving allowance.

■ The fatal flaw in the government's case is, as we have seen, that the truck receiving allowance was payable only as and for "delivery in store" at Bartlett's Junction City warehouse, not "F.O.B. bin site—buyer's conveyance", and that the false statement was incapable of influencing the government to pay the allowance in the absence of proof of an "in store" transaction.

It is significant that the Dickinson County transaction referred to in Krause's statement involved the sale of rye which was "delivered in store", hence the truck receiving allowance was earned and payable. It is also significant that in a footnote to the government's brief it is admitted that the confirmation of sale in this transaction stated "the delivery basis" as "F.O.B. Conveyance at Bin Site"—"Trucking to be performed by buyer"; and that "The 'FOB Conveyance at Bin Site' is obviously inconsistent with the terms of the agreement contained in the conversations * * *". But, the government seeks to supply the deficiency by suggesting "that everyone involved in this transaction knew and acted upon the fact that this was an 'in store warehouse sale' ". There was testimony by Bartlett's representative that the wording "in store warehouse" should have appeared on the confirmation of sale and was left off inadvertently. The fact remains, however, that the government apparently "inadvertently" proved an incompensable "F.O.B. bin site" transaction, not an "in store" transaction, and the case was submitted to the jury on that theory.

Bartlett plainly intended to consummate a transaction by which it would earn an "in store" allowance. The government was authorized to pay the allowance if it were in fact earned, i.e. if the sale were "in store" in an approved warehouse in an adjacent county. It is also inferable that Bartlett intended to influence the CCC to pay the "in store" charges by making a false statement to the effect that the grain was unloaded and came to rest in its warehouse in an adjacent county. The false statement was, however, incapable of inducing the CCC to pay the allowance simply because it would not have been payable if the grain had been unloaded in accordance with the representations in the statement.

Our case is unlike United States v. Kapp, 302 U.S. 214, 58 S.Ct. 182, 82 L.Ed. 205, and Kay v. United States, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607, where the false statement was made to secure benefits payable under an invalid statute. Here the government's case fails not because the allowance was legally incapable of being earned, but due to failure of proof entitling Bartlett to the allowance.

■ The evidence was insufficient to prove the offense charged. The government may be able to show that the oral contract between the parties was not integrated in the written documents which establish a bin site sale. We do not know whether this can be done because the record fails to disclose any consideration of the point in the district court proceedings. Accordingly, the case is remanded for the entry of "such appropriate judgment as may be just under the circumstances". See 28 U.S.C. § 2106; Phillips v. United States, 10 Cir., 311 F.2d 204; Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335. Inasmuch as the appellant has moved for a judgment of acquittal and for a new trial, it seems appropriate to remand the case without directions to the District Court for the exercise of its judgment under Rule 29, F.R.Crim.P., whether to direct a verdict of acquittal or grant a new trial.

Reversed and remanded accordingly.