**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

GAIL MANNEY,

*Defendant - Appellant*.

No. 23-716

D.C. No.
3:21-cr-00019-
HDM-CSD-1

OPINION

Appeal from the United States District Court
for the District of Nevada
Howard D. McKibben, District Judge, Presiding

Argued and Submitted May 13, 2024
Phoenix, Arizona

Filed August 19, 2024

Before: Roopali H. Desai and Ana de Alba, Circuit Judges,
and Philip S. Gutierrez, District Judge.[*]

Opinion by Judge de Alba

---

[*] The Honorable Philip S. Gutierrez, United States District Judge for the Central District of California, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed Gail Manney's conviction for violating 18 U.S.C. § 922(a)(6), which makes it a crime for any person in connection with the acquisition or attempted acquisition of any firearm knowingly to make any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale of such firearm.

The panel rejected Manney's argument that § 922(a)(6), as applied to the facts of her case, violates the Second Amendment. Because the Second Amendment does not protect an individual's false statements, the conduct that § 922(a)(6) regulates falls outside the scope of the Second Amendment's plain text.

The panel also rejected Manney's contention that her false statement was not "material" under § 922(a)(6). This contention is foreclosed by *Abramski v. United States*, 573 U.S. 169 (2014), which held that a false statement regarding the actual purchaser of a firearm was "material" under § 922(a)(6) even if the actual purchaser could legally possess a firearm.

The panel disposed of other claims in a concurrently filed memorandum disposition.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Nadia J. Ahmed (argued) and Adam M. Flake, Assistant United States Attorneys; Robert L. Ellman, Assistant United States Attorney, Appellate Chief; Jason M. Frierson, United States Attorney; Office of the United States Attorney, Las Vegas, Nevada; for Plaintiff-Appellee.

Wendi L. Overmyer (argued) and Aarin E. Kevorkian, Assistant Federal Public Defenders; Rene L. Valladares, Federal Public Defender; Federal Public Defender for the District of Nevada, Las Vegas, Nevada; for Defendant-Appellant.

---

**OPINION**

DE ALBA, Circuit Judge:

Gail Manney challenges her conviction under 18 U.S.C. §§ 922(a)(6) and 924(a)(2).[1] One of Manney's claims is that, as applied to the facts of her case, 18 U.S.C. § 922(a)(6) violates the Second Amendment.[2] We affirm her conviction.[3]

---

[1] 18 U.S.C. § 924(a)(2) outlines the punishment for a violation of 18 U.S.C. § 922(a)(6).

[2] Manney's other claims are disposed of in a concurrently filed memorandum disposition.

[3] We vacate part of Manney's sentence as outlined in the memorandum disposition.

## I.   Factual and Procedural Background

18 U.S.C. § 922(a)(6) makes it a crime "for any person in connection with the acquisition or attempted acquisition of any firearm . . . knowingly to make any false or fictitious oral or written statement . . . with respect to any fact material to the lawfulness of the sale . . . of such firearm."

On April 21, 2021, Manney and another individual went to Hi-Cap Firearms ("Hi-Cap"), a federal firearms licensee located in Reno, Nevada, to purchase firearms.  Manney bought her first firearm from Hi-Cap earlier that week. While in the store, Manney was on her cell phone, talking and taking photographs of various firearms.  She eventually chose seven handguns to purchase.  A Hi-Cap employee provided her with copies of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Form 4473 for each of the seven handguns, which she needed to fill out and Hi-Cap needed to process before Manney could take the handguns. When Manney signed ATF Form 4473, she certified that she was the actual purchaser of the firearms.

After Manney left the shop, the Hi-Cap employee contacted the ATF on suspicion that Manney was a straw purchaser.[4]  ATF assigned the case to Special Agent Joshua Caron who then requested Hi-Cap provide the ATF Form 4473 Manney signed and surveillance footage from her purchase.  After reviewing the footage, Agent Caron asked Hi-Cap to schedule Manney's pickup time so that he could conduct an interdiction.

---

[4] A "straw purchaser" is an individual who purchases a gun on another's behalf while falsely claiming that it is for herself.  *Abramski v. United States*, 573 U.S. 169, 171 (2014).

Manney returned to Hi-Cap on May 6, 2021, and paid for the firearms. When she left the store with her purchase, Agent Caron approached her and informed Manney that he was concerned that she purchased the firearms for someone else. Manney denied the allegation but eventually agreed to accompany Agent Caron to the ATF Reno office to discuss the issue further. While at the office, Manney continued to deny that she purchased the firearms for someone else. She even consented to let Agent Caron look through her phone.

Agent Caron searched the phone and found numerous incriminating WhatsApp messages between Manney and her son, Razaaq, discussing the purchase of firearms.[5] Razaaq is a convicted felon who is prohibited from possessing firearms. On May 27, 2021, the government indicted Manney for a violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2) for making false statements on ATF Form 4473. She was convicted of the charges after a jury trial.

## II. Legal Standard

"We review the constitutionality of a statute as a matter of law de novo . . . . However, constitutional issues not originally raised at trial are reviewed for plain error." *United States v. Chi Mak*, 683 F.3d 1126, 1133 (9th Cir. 2012) (citations omitted). The parties disagree on the appropriate standard of review. We assume, without deciding, that de

---

[5] In the messages, Razaaq sent Manney a picture of a firearm, stating "[o]r any 4 you can get for the money." They then discussed different firearms to purchase. Razaaq also sent Manney another picture of a firearm, after which Manney asked "[s]o you want me to get that if they have it." In the messages, Manney and Razaaq referenced a future meeting between Manney and a friend of Razaaq's for some sort of exchange; they also show that Razaaq provided money to Manney.

novo review applies as Manney's challenge fails under either standard.

## III.  Discussion

The Second Amendment states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  The Amendment guarantees an individual the "right to possess and carry weapons in case of confrontation."  *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

In *New York Rifle and Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court articulated the proper framework for analyzing Second Amendment challenges. "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 24.  "The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*  "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* (quotation marks omitted).  The Court used this framework to strike down New York's proper cause requirement, holding that the regulation burdened conduct the Second Amendment's plain text protects. *Id.* at 32.  It then concluded that the government failed to meet its "burden to identify an American tradition justifying the State's proper-cause requirement." *Id.* at 70.

Most recently, the Supreme Court applied the *Bruen* framework in *United States v. Rahimi*, 602 U.S. ----, 144 S. Ct. 1889 (2024), and held that "[w]hen a restraining order contains a finding that an individual poses a credible threat to the physical safety of an intimate partner, that individual

may—consistent with the Second Amendment—be banned from possessing firearms while the order is in effect." *Id.* at 1896. The Court reiterated that "the right to keep and bear arms is among the fundamental rights necessary to our system of ordered liberty. Derived from English practice and codified in the Second Amendment, the right secures for Americans a means of self-defense." *Id.* at 1897 (internal citation and quotation marks omitted). The Court did not purport to "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment." *Id.* at 1903 (citing *Bruen*, 597 U.S. at 31). And of note, it did not elaborate further on the conduct the Second Amendment's plain text covers. *See id.* at 1929 (Jackson, J., concurring) ("And the unresolved questions hardly end there. Who is protected by the Second Amendment, from a historical perspective? To what conduct does the Second Amendment's plain text apply?").

It is important to remember that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. Justice Kavanaugh emphasized this point in his concurrence in *Bruen*: "[T]he Second Amendment is neither a regulatory straitjacket nor a regulatory blank check. Properly interpreted, the Second Amendment allows a variety of gun regulations." *Bruen*, 597 U.S. at 80 (Kavanaugh, J., concurring) (citation and quotation marks omitted). In his *Bruen* concurrence, Justice Alito discussed the limited sweep of the Court's holding. "Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun." *Id.* at 72 (Alito, J., concurring); *see also id.* at 76 ("All that we decide in this case is that the Second Amendment protects the right of law-abiding people to carry a gun outside the home for self-defense and that the Sullivan

Law, which makes that virtually impossible for most New Yorkers, is unconstitutional." (Alito, J., concurring)). And in *Rahimi*, Justice Kavanaugh discussed the ongoing validity of "traditional exceptions to the right." *See* 144 S. Ct. at 1923 (Kavanaugh, J., concurring) ("[L]ongstanding . . . laws imposing conditions and qualifications on the commercial sale of arms are presumptively constitutional." (quoting *Heller*, 554 U.S. 626–27) (quotation marks omitted)). We keep these words in mind as we review Manney's claim.

Manney argues that § 922(a)(6), as applied to the facts of her case, violates the Second Amendment. To analyze her claim, we must first determine if the plain text of the Second Amendment covers Manney's conduct. Precedent has taught us that handguns qualify as "arms" under the Second Amendment. *Bruen*, 597 U.S. at 32. Further, Manney is a member of "the people" the Second Amendment protects. The question then becomes what conduct does § 922(a)(6) regulate? Manney first argues that § 922(a)(6) regulates a purchaser's possessory interest by imposing information requirements for future transferees. Then, she frames the conduct more broadly by arguing that the statute inhibited her ability to acquire arms by regulating the purchase of firearms. Neither argument is persuasive.

Although the Supreme Court has yet to expound on all conduct the Second Amendment's plain text covers, it has not held that an individual can invoke the Second Amendment's constitutional protection by describing the conduct in question at such a high level of generality. Nor has the Court held that every requirement making it slightly more difficult to possess a firearm demands a full historical inquiry into its origin. Both *Bruen* and *Rahimi* dealt with prohibitions, or near prohibitions, on the ability to possess firearms. 597 U.S. at 11–13; 144 S. Ct. 1895–97. By

prohibiting individuals from possessing firearms outside of the home absent some special need (*Bruen*) or when subject to a restraining order (*Rahimi*), the statutory provisions in each case directly implicated the right to bear and carry arms for self-defense. Accordingly, Manney's reading of the Court's recent decisions is too broad.

Under Manney's characterizations of § 922(a)(6), *any* regulation related to the process of purchasing firearms would be covered by the Second Amendment's plain text, regardless of the conduct the statute regulates. For instance, even asking an individual to fill out the ATF 4473 form or making them wait a short time while their application is processed would come under Second Amendment's plain text. But whether a regulation is covered by the Second Amendment's plain text must be tied to "the conduct the regulation prevents [the individual] from engaging in." *Doe v. Bonta*, 101 F.4th 633, 639 (9th Cir. 2024) (citing *Bruen*, 597 U.S. at 32). We thus decline to stretch the holding of *Bruen* beyond its limits by adopting Manney's proposed view of § 922(a)(6).

Instead, we find that § 922(a)(6) prohibits making false statements. The statute only relates to firearms insofar as it regulates statements made in connection with firearm acquisitions and information "material to the lawfulness of the sale." But the regulated *conduct* is unrelated to the possession of a firearm. In other words, the statute regulates statements made by the individual purchasing a firearm to ensure that a purchaser is not lying to a firearms dealer about who is purchasing the firearm. The fact that the information a purchaser provides may trigger a separate statute that may

bar the purchase of a firearm does not transform § 922(a)(6) into a statute regulating the possession of firearms.[6]

Taking all of this into consideration, as applied to the facts of her case, § 922(a)(6) did not violate Manney's Second Amendment right. The statute did not prohibit Manney from possessing firearms as evidenced by her ability to purchase a firearm shortly before her interaction with Agent Caron. Nor did it prohibit Manney from transferring those firearms to another individual. All the statute did was prohibit Manney from lying about the actual purchaser of the firearms.[7] Because the Second Amendment

---

[6] The only other circuit to address a prosecution under § 922(a)(6) after *Bruen* came to a similar conclusion, albeit under different circumstances. In *United States v. Holden*, 70 F.4th 1015 (7th Cir. 2023), the Seventh Circuit addressed an as applied challenge to § 922(a)(6); there, the appellee argued that his false statement was not "material" because the statute that precluded him from possessing a firearm was unconstitutional. 70 F.4th 1016–18. The Seventh Circuit disagreed, finding that Congress is entitled to seek certain information from would-be purchasers. *Id.* at 1017 ("The power to collect accurate information is of a different character—and stands on a firmer footing—than the power to prohibit particular people from owning guns."). It also concluded that the government may punish false statements even when it is not entitled to demand answers. *Id.* ("The word 'material' in § 922(a)(6) does not create a privilege to lie, when the answer is material to a statute, whether or not that statute has an independent constitutional problem."); *see also United States v. Scheidt*, 103 F.4th 1281, 1284 (7th Cir. 2024) ("Completing ATF Form 4473, and adhering to its attendant truth-telling requirement, is conduct that is outside the scope of the Second Amendment's protections, not requiring application of *Bruen*'s historical analysis framework."). We agree.

[7] And the Supreme Court has long held that defendants cannot avoid punishment for providing false information "in feigned compliance with a statutory requirement" by "challenging the validity of the requirement

does not protect an individual's false statements, the conduct § 922(a)(6) regulates falls outside the scope of the Second Amendment's plain text, and our analysis ends here.

Manney separately argues that her false statement was not "material" under § 922(a)(6) because 18 U.S.C. § 922(g)(1), which prohibits individuals with felony convictions from possessing firearms, is unconstitutional. The government argued at trial that Manney's statement that she was the actual purchaser of the firearms was false because she was purchasing them on behalf of her son, Razaaq.  The government also presented evidence that Razaaq was convicted of a felony, and thus unable to purchase the firearms himself.  Manney contends that because Razaaq can legally possess firearms, her statement falsely claiming to be the actual purchaser of the guns is not "material."

There are numerous issues with Manney's argument. We address only the most salient issue, which is that this argument is foreclosed by the Supreme Court's decision in *Abramski v. United States*, 573 U.S. 169 (2014).  In *Abramski*, the Court held that a false statement regarding the actual purchaser of a firearm was "material" under § 922(a)(6) even if the actual purchaser could legally possess a firearm.[8] 573 U.S. at 171–72.  We are bound by precedent. As such, Manney's challenge of her conviction fails.

---

itself."  *See, e.g.*, *United States v. Knox*, 396 U.S. 77, 79 (1969); *Kay v. United States*, 303 U.S. 1, 7 (1938); *LeChance v. Erickson*, 522 U.S. 262, 267–68 (1998); *Dennis v. United States*, 384 U.S. 855, 867 (1966).

[8] For this reason, we do not address the constitutionality of § 922(g)(1).

## IV.   Conclusion

We conclude that Manney cannot establish that
§ 922(a)(6) violates her Second Amendment right under the
facts of this case.    Therefore, we **AFFIRM** Manney's
conviction.