(No. 41907.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JOHN RICKER, Appellant.

*Opinion filed March 24, 1970.—Rehearing denied October 6, 1970.*

WARD, J., took no part.

JOHN RICKER, *pro se*.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and MICHAEL D. STEVENSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

A jury in the circuit court of Cook County found John Ricker guilty of perjury. The court placed him on probation for 3 years and fined him $1000. The basis of the conviction was the incriminating testimony of Ricker before the February and May, 1963, grand juries which returned indictments against Louis Fisher and his completely contradictory and exculpating testimony in Fisher's trial at which Fisher

was acquitted. While there is no question that defendant made contradictory statements under oath, he has raised some twelve points seeking reversal of his conviction.

Defendant first challenges the constitutionality of paragraph (b) of section 32—2 of the Criminal Code (Ill. Rev. Stat. 1967, ch. 38, par. 32—2(b)), upon which his conviction is based. Section 32—2 provides in part:

"(a) A person commits perjury when, under oath or affirmation, in a proceeding or in any other matter where by law such oath or affirmation is required, he makes a false statement, material to the issue or point, in question, which he does not believe to be true.

"(b) Proof of Falsity.

An indictment or information for perjury alleging that the offender, under oath, has made contradictory statements, material to the issue or point in question, in the same or in different proceedings, where such oath or affirmation is required, need not specify which statement is false. At the trial, the prosecution need not establish which statement is false."

It is argued that paragraph (b) creates an unconstitutional presumption of guilt. A considerable portion of defendant's brief is devoted to discussing and quoting from cases such as *Yee Hem* v. *United States,* 268 U.S. 178, 45 S. Ct. 470; 69 2 Ed. 904; *Tot* v. *United States,* 319 U.S. 463, 87 L. Ed. 2d 1519, 63 S. Ct. 1241; *United States* v. *Gainey,* 380 U.S. 63, 13 L. Ed. 2d 658, 85 S. Ct. 754; and *United States* v. *Romano,* 382 U.S. 136, 15 L. Ed. 2d 210, 86 S. Ct. 279. *Romano* involved the constitutionality of sections 5601(b)(1) and 5601(b)(4) of 26 U.S.C. which provided in part "that the presence of the defendant at the site of an illegal still 'shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury * * *.'" 382 U.S. 136, 138, 15 L. Ed. 2d 210, 212, 86 S. Ct. 279, 281. *Yee Hem, Tot* and *Gainey* involved similar statutory pre-

sumptions. The issue in those cases was "the limits which the Fifth and Fourteenth Amendments place 'upon the power of Congress or that of a state legislature to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated.' " *Romano* v. *United States*, 382 U.S. 136, 139, 15 L. Ed. 2d 210, 213, 86 S. Ct. 279, 281.

By definition contradictory statements cannot both be true. (See *People* v. *Walker*, 28 Ill.2d 585.) Thus, proof that a person has made contradictory statements proves of itself, without aid of any presumption, that the person has made a false statement. The only presumption involved in paragraph (b) of section 32—2 is that he did not believe both statements to be true. It is, of course, arguable that the statements were made because of excusable mistake or some other valid reason. Since this statute is limited to proceedings where an oath or affirmation is required and to a statement that is material to an issue or point in question, it is a reasonable presumption. In most cases perjury will have been committed; the exception will be rare and ordinarily will be shown by evidence more readily available to the defendant than to the State. Under such circumstances, a rebuttable presumption which puts the burden of going forward with the evidence on the defendant is constitutionally permissible.

It is next argued that failure to warn defendant of his privilege against self-incrimination should preclude use of his contradictory statements to convict him of perjury. This issue has been analyzed and discussed at length in several Federal cases. The conclusion reached in these cases was summarized in *United States* v. *DiGiovanni* (7th cir.), 397 F.2d 409, *cert.* denied 393 U.S. 924, as follows: "It is well established that the Government's failure to give Miranda-type warnings to a grand jury witness, even one as to whom the proceedings have become accusatory, does not bar a perjury prosecution for false testimony before the grand

jury. See Cargill v. United States, 10 Cir. 381 F.2d 849 (1967), cert. denied, 389 U.S. 1041, 88 S. Ct. 781, 19 L. Ed. 2d 831 (1968) ; United States v. Di Michele, 3 Cir., 375 F.2d 959, cert. denied 389 U.S. 838, 88 S. Ct. 54, 19 L. Ed. 2d 100 (1967) ; United States v. Rosen, 2 Cir., 353 F.2d 523 (1965), cert. denied, 383 U.S. 908, 86 S. Ct. 889, 15 L. Ed. 2d 663 (1966) ; United States v. Winter, 2 Cir., 348 F.2d 204, cert. denied, 382 U.S. 955, 86 S. Ct. 429, 15 L. Ed. 2d 360 (1965) ; United States v. Parker, 7 Cir., 244 F.2d 943, cert. denied, 355 U.S. 836, 78 S. Ct. 61, 2 L. Ed. 2d 48 (1957)." 397 F.2d at 412.

Defendant attempts to distinguish the foregoing cases by first pointing out that the "federal statute [section 1621 of 18 U.S.C.] is similar to paragraph (a) of the Illinois statute. [Section 32—2(a).] There is nothing in the federal statute classifying contradictory statements as perjury." He then states : "In the instant case, the defendant did not commit perjury * * * 'federal style' or as defined in paragraph (a) of the Illinois act. He was charged under section (b) of the Illinois act. Therefore the federal cases are not analogous."

It is apparent that defendant again confuses the effect of paragraph (b) of section 32—2. We have already shown that proof of contradictory statements made under the circumstances mentioned in that paragraph is proof of all the elements of perjury as defined in paragraph (a). Paragraph (b) does not create a new or different offense from that defined in paragraph (a), it merely provides another method of proving perjury as defined in paragraph (a). We see no reason, and defendant suggests none, why the method of proving perjury should change the rule that failure to warn a witness of his privilege against self-incrimination will not bar a perjury prosecution.

Defendant twice raises the question of *res judicata,* which requires a brief description of the indictment returned against him and prior proceedings under it. The indictment

contained 6 counts. Count 1 charged conspiracy to obstruct justice; count 2, conspiracy to commit perjury; count 3, obstructing justice; count 4, the making of contradictory statements before the February 1963 grand jury and in the Fisher trial; count 5, the making of contradictory statements before the May 1963 grand jury and in the Fisher trial; and count 6, perjury at the Fisher trial. Prior to the first trial, the People *nolle prossed* count 6. A jury then found defendant not guilty on counts 1 and 2, but it failed to agree as to counts 3, 4 and 5. Prior to the second trial, the People *nolle prossed* count 3, and counts 4 and 5 were consolidated for trial. It was, of course, under counts 4 and 5 that defendant was found guilty.

Defendant points out that counts 4 and 5 charge perjury under paragraph (b) of section 32—2, while count 6 charges perjury under paragraph (a) of the section. He then argues that the *nolle prosse* of count 6 is *res judicata,* or amounts to a dismissal, of the charge under counts 4 and 5. This court has held that although one of two counts charging the same offense has been *nolle prossed,* the defendant may nevertheless be convicted on the remaining count. *People* v. *Glenn,* 294 Ill. 333; see also *People* v. *Berry,* 17 Ill.2d 247.

Defendant also argues that his acquittal on count 2 charging conspiracy to commit perjury is *res judicata* of counts 4 and 5 charging perjury. In support of this argument he cites *Sealfon* v. *United States,* 332 U.S. 575, 92 L. Ed. 180, 68 S. Ct. 237, which involved "the question whether an acquittal of conspiracy to defraud the United States precludes a subsequent prosecution for commission of the substantive offense, on the particular facts here involved." (332 U.S. 575, 576, 92 L. Ed. 180, 182, 68 S. Ct. 237, 238.) The Court first stated:

"It has long been recognized that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. [Citation.] Thus, with some exceptions, one may be prosecuted for both crimes. Ibid. But

res judicata may be a defense in a second prosecution. That doctrine applies to a criminal as well as civil proceedings [citations] and operates to conclude those matters in issue which the verdict determined though the offenses be different. [Citation.]

"Thus the only question in this case is whether the jury's verdict in the conspiracy trial was a determination favorable to petitioner of the facts essential to conviction of the substantive offense. This depends upon the facts adduced at each trial and the instructions under which the jury arrived at its verdict at the first trial." (332 U.S. 575, 578-579, 92 L. Ed. 180, 184, 68 S. Ct. 237, 239.) The court then went on to hold that based on the facts presented and instructions given in the first trial, the jury verdict precluded a trial of the substantive offense.

There is nothing in the voluminous record before us concerning defendant's first trial other than the general verdict of the jury finding him "not guilty of conspiracy to commit perjury" and the court's judgment "discharging" him on that count. It is impossible, therefore, to consider whether the jury's verdict on the conspiracy count was a determination favorable to defendant of facts essential to conviction on the perjury count.

Defendant also raises the question of whether the statute on compulsion (Ill. Rev. Stat. 1967, ch. 38, par. 7—11) is available as a defense under the facts of this case. He alleges he was threatened by his superiors that he would lose his position as an attorney for The Metropolitan Sanitary District of Greater Chicago if he did not co-operate with the State's Attorney's office in the investigation of Louis Fisher, also an attorney for the Sanitary District. He further alleges that an assistant State's Attorney threatened to indict him along with Fisher if he did not co-operate in the investigation.

Section 7—11(a) of the Criminal Code provides: "A person is not guilty of an offense, other than an offense

punishable with death, by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believes death or great bodily harm will be inflicted upon him if he does not perform such conduct." (Ill. Rev. Stat. 1967, ch. 38, par. 7—11(a).) This statute by its terms is applicable only where the threat is "the imminent infliction of death or great bodily harm" and the person committing the offense "reasonably believes death or great bodily harm will be inflicted upon him if he does not perform such conduct." The compulsion of which defendant complains simply does not excuse his perjury.

He also argues that this compulsion voided the immunity waiver he signed prior to testifying before the grand jury and restored his privilege against self-incrimination. Defendant, as a public official, could have been dismissed from his position because of his refusal to waive his privilege against self-incrimination before the grand jury. (*Gardner* v. *Broderick,* 392 U.S. 273, 20 L. Ed. 2d 1082, 88 S. Ct. 1913; *Uniformed Sanitation Men Ass'n, Inc.* v. *Commissioner of Sanitation,* 392 U.S. 280, 20 L. Ed. 2d 1089, 88 S. Ct. 1917.) If he testified because he would otherwise have forfeited his public position, his testimony could not be used in a prosecution for a past crime. (*Garrity* v. *New Jersey,* 385 U.S. 493, 17 L. Ed. 2d 562, 87 S. Ct. 616.) This does not mean, however, that he could not be prosecuted for false testimony he may have given before the grand jury.

We have already pointed out that failure to warn a witness of his privilege against self-incrimination does not bar a perjury prosecution for his false testimony. The rationale underlying this rule is "that the immunity afforded by the constitutional guaranty relates to the past, and does not endow the person who testifies with a license to commit perjury." (*Glickstein* v. *United States,* 222 U.S. 139, 142, 56 L. Ed. 128, 130, 32 S. Ct. 71, 73.) That rationale is ap-

plicable here. Thus, even if the immunity waiver were void, the privilege against self-incrimination would only protect defendant from use of his statements as evidence of past crimes.

Defendant also argues that he was not permitted to testify fully to all matters about which he was questioned before the grand jury. He concludes from this that his immunity waiver was voided. As we have just indicated, whether the immunity waiver was valid or void, defendant could be prosecuted for his false testimony.

It is also argued that *People* v. *Overman,* 52 Ill. App. 2d 96, requires a reversal of this conviction. In that case Overman and another were tried for burglary. Overman was called as the court's witness in his own trial and as such witness made allegedly false statements and he was thereafter indicted for perjury. The appellate court there held that, since it was improper to call him as the court's witness in his own trial, he could not be indicted for his testimony. That opinion is not controlling here.

We again point out that under the circumstances of this case, whether the defendant was warned of his constitutional privilege, whether he properly signed his immunity waiver, or whether he could have been compelled to testify is beside the point. He did testify, he testified falsely and he can be convicted of perjury.

The United States Supreme Court, in rejecting the type of argument defendant has repeatedly advanced, stated: "In Kay v. United States, 303 U.S. 1, 82 L. Ed. 607, 58 S. Ct. 468, this Court upheld a conviction for making false statements in connection with the Home Owners' Loan Act of 1933, without passing upon the claim that the Act was invalid. The Court said, 'When one undertakes to cheat the Government or to mislead its officers, or those acting under its authority, by false statements, he has no standing to assert that the operations of the Government in which the effort to cheat or mislead is made are without constitutional

sanction.' 303 U.S. at 6, 82 L. Ed. at 612. * * *. Analogous are those cases in which prosecutions for perjury have been permitted despite the fact that the trial at which the false testimony was elicited was upon an indictment stating no federal offense (United States v. Williams, 341 U.S. 58, 65-69, 95 L. Ed. 747, 752-754, 71 S. Ct. 595); that the testimony was before a grand jury alleged to have been tainted by governmental misconduct (United States v. Remington, 208 F.2d 567, 569 (C.A. 2d Cir. 1953), cert. denied, 347 U.S. 913, 98 L. Ed. 1069, 74 S. Ct. 476); or that the defendant testified without having been advised of his constitutional rights (United States v. Winter, 348 F.2d 204, 208-210 (C.A. 2d Cir. 1965), cert. denied, 382 U.S. 955, 15 L. Ed. 2d 360, 86 S. Ct. 429, and cases cited therein." *Dennis* v. *United States,* 384 U.S. 855, 866, 16 L. Ed. 2d 973, 981, 86 S. Ct. 1840, 1847.

The gist of defendant's entrapment argument is that after he had given his incriminating testimony against Fisher before the grand jury, he told the assistant State's Attorney his testimony at the forthcoming Fisher trial would be that Fisher had committed no crime; that the assistant State's Attorney knew he could not make a case against Fisher without defendant's testimony; that the assistant State's Attorney decided that if he could not get Fisher, he could get defendant; that at the Fisher trial he had defendant called as the court's witness "not to prosecute Fisher, for he knew he had no case against him, but for the sole purpose of obtaining a contrary statement from him in order to prosecute him for perjury." The assistant State's Attorney denied that he knew Ricker would testify differently at the Fisher trial from his testimony before the grand jury. We think it is immaterial whether he knew Ricker would testify differently at the Fisher trial.

In *People* v. *Outten,* 13 Ill.2d 21, we stated: "As a general rule, entrapment can exist only when the criminal intent originates in the mind of the entrapping officer, and if

such intent arose in the mind of the accused there is no entrapment, though officers may afford an opportunity for the commission of the offense * * *." (13 Ill.2d at 23.) The decision to contradict his grand jury testimony at the Fisher trial was made by defendant and the assistant State's Attorney merely afforded him the opportunity by having the court call him as a witness. To hold that it is entrapment to call a witness the People believe or know will testify falsely or make a contradictory statement would be to license perjury. All any witness would have to do is tell the State's Attorney he intends to make a false statement or a contradictory statement and he could thereafter do so without fear of penalty.

It is also argued that *People* v. *Walker*, 28 Ill.2d 585, requires a reversal of this conviction. In that case we held that statements made at a trial after an immunity order has been entered cannot be used to prove perjury in a prior proceeding. Defendant asserts that he should have been given the benefit of an immunity order at the Fisher trial. He did not, however, claim his constitutional privilege at that trial and it was proper to use these statements to show a prior perjury.

Defendant contends that the prosecutor made inflammatory statements to the jury. He has quoted several of these remarks none of which we find objectionable. The comment of which he complains most, however, is as follows: "Judge Richard Fitzgerald is a good man, and will know what an appropriate punishment to fix [sic] if you reach the only true verdict in this case. He will not be exacting in his punishment." What defendant fails to quote is the very next sentence by his attorney. "Your Honor, I'm going to object to that kind of argument about punishment. Well, I will withdraw it. Go ahead."

The final contention is that the prosecutor consistently prevaricated throughout the trial. We have checked the meager references to the abstract cited in connection with

this argument and find they are insufficient to support the charge. Also, the short answer to this argument is that the jury heard the witnesses and believed the prosecution.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. Justice WARD took no part in the consideration or decision of this case.