THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHUNG UK KANG, Defendant-Appellant.

Fourth District    No. 4—94—0223

Argued October 18, 1994.—Opinion filed January 20, 1995.

David S. Mejia (argued), of Chicago, and Robert E. Senechalle, Jr., of Robert E. Senechalle, Jr., Ltd., of Forest Park, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Elliott Turpin (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Following a jury trial in the circuit court of McLean County, defendant Chung Uk Kang was convicted of perjury (720 ILCS 5/32—2 (West 1992)) and sentenced to five years' imprisonment, to be served consecutively to a sentence he was serving when the alleged perjury was committed. He now appeals, claiming (1) the testimony used to convict him was obtained in violation of his constitutional rights, (2) the evidence was insufficient to convict him, (3) the jury was erroneously instructed that he could be convicted absent proof of specific intent, and (4) his prison sentence is excessive and the result of a misapprehension of the law by the trial court. We disagree and affirm.

Defendant was charged with perjury in connection with trial testimony given by him against Jeff McKone, a codefendant, pursuant to a plea agreement. Defendant had pleaded guilty to criminal drug conspiracy and, as part of his plea agreement, testified before the grand jury as to McKone's role in the conspiracy. Defendant testified that in the fall of 1991 he was a student at Illinois State University. He stated he was a friend of Eric Emanuel and, in November 1991, arranged with Emanuel to sell cocaine. Emanuel was working as a runner for McKone and defendant. In late November 1991, Emanuel went to the apartment of Greg Conner to drop off an ounce of cocaine. After the sale, a part of the money went to defendant, part to Emanuel, and part to McKone. Defendant spoke with McKone prior to November 21, 1991, about McKone supplying him with cocaine.

At the time of McKone's trial, defendant was serving a sentence of seven years in prison on his conviction for criminal drug conspiracy. When called to testify at the trial, defendant attempted to invoke his fifth amendment right against self-incrimination. He stated his attorney had advised him not to answer any questions because his case was pending in the appellate court. The trial court directed defendant to answer some nonincriminating questions. When the prosecutor asked defendant if he knew Eric Emanuel, defendant again invoked his fifth amendment right against self-incrimination. The court ruled that by virtue of defendant's guilty plea, the privilege against self-incrimination was not available to him. The court indicated that if defendant refused to testify, it would impose sanctions. When asked if he wanted to telephone his attorney, defendant declined and stated he would testify.

When he resumed his testimony, defendant admitted he knew Emanuel and McKone. He remembered where he lived during the fall of 1991, and he remembered that Emanuel had an injury to his arm. He stated he did not recall whether he had asked Emanuel to make some deliveries for him in November 1991. He stated he did not recall specific answers he had given in his grand jury testimony; it had been over a year ago, he was addicted to drugs at the time, and he could not remember exact dates. He did not recall whether he had given Emanuel an ounce of cocaine to take to Conner's apartment on November 21, 1991; he did not recall receiving money from Emanuel. The prosecutor went over certain questions he had asked defendant at the grand jury proceedings and asked defendant if he recalled giving those answers. Defendant replied that he did not. Out of the presence of the jury, the trial court accused defendant of not being truthful in making his answers and indicated he was subject to sanctions. When defendant resumed his testimony, the following exchange occurred:

"[Prosecutor]: [Defendant], going back again to the November 21st, 1991[,] date[,] do you recall, now that you have had a chance [t]o think about it, do you recall providing an ounce of cocaine to Eric Emanuel to take over to Greg Conner's apartment?

A[.] Yes.

Q[.] Prior to that particular date had you had conversation with your friend Jeff McKone about him obtaining cocaine for you?

A[.] I honestly do not remember.

Q[.] Again[,] I will direct your attention [to] October 15[ ], 1992, before the Grand Jury[. Y]ou recall me asking you the question: Had you spoken with Jeff McKone prior to November 21[ ], 1991, about him supplying you with cocaine?

And you answering: Yes.

A[.] If that is what I said at the Grand Jury indictment.

Q[.] You recall saying that now?

A[.] I don't recall saying that, but if that is what the statement says I guess I must have said it.

Q[.] You did, in fact, speak with Mr. McKone prior to that November date about him supplying you with cocaine?

A[.] At this present time I don't remember talking to him. The exact date, no. About that, no.

Q[.] You remember at any time talking to Mr. McKone about him supplying you with cocaine?

A[.] No, not really.

Q[.] No?

A[.] No, sir."

Later in his testimony, defendant stated that Emanuel was his runner. He obtained the cocaine that Emanuel took to Conner's apartment on November 21, 1991, from multiple sources. He testified that he did not recall getting the cocaine from McKone. He also stated he did not believe he had received cocaine from McKone in the fall of 1991. He did receive cocaine from McKone at one time or another, but did not remember if it was during the fall, spring, or summer. He recalled being arrested at his apartment on February 7, 1993, but did not remember McKone being present there earlier that evening.

Defendant filed a motion to suppress all evidence of his McKone trial testimony on the ground that the testimony was in violation of his right against self-incrimination and that he was denied access to his attorney prior to being compelled to testify. The trial court denied the motion.

At defendant's perjury trial, he testified that at the time he testified in the McKone trial, he had no specific recollection of the questions and answers in his grand jury testimony. After defendant was convicted, his counsel filed a motion for a new trial, which was denied. At the sentencing hearing, the trial court made several findings, among which were (1) other than a traffic offense and his criminal drug conspiracy conviction, defendant had led a law-abiding life; (2) his conduct was the product of circumstances not likely to recur; (3) his character and attitude indicate that he is likely to commit another crime, as he committed the perjury while having previously been convicted; and (4) a sentence of imprisonment is necessary to deter others from committing the same crime and defendant is eligible for an extended-term sentence. The court indicated that a concurrent sentence would be appropriate and was preferable to a consecutive sentence. However, the court noted the existence of sec-

tion 5—8—4(f) of the Unified Code of Corrections (Code) (730 ILCS 5/5—8—4(f) (West 1992)), which the court indicated seemed to mandate a consecutive sentence. Defense counsel suggested to the court the possibility of probation, but the court did not discuss this option. The court sentenced defendant to five years' imprisonment, to be served consecutively to the sentence he was then serving for criminal drug conspiracy.

■ Defendant argues on appeal that the McKone trial testimony was obtained in violation of due process and his rights under the fifth and sixth amendments to the United States Constitution (U.S. Const., amends. V, VI). He cites the general proposition that defendants are entitled to the assistance of counsel during critical stages of the proceedings against them and insists that his McKone trial testimony was such a critical stage. While the proposition stated by defendant is true (see *United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Kirby v. Illinois* (1972), 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877; *Hamilton v. Alabama* (1961), 368 U.S. 52, 7 L. Ed. 2d 114, 82 S. Ct. 157; *People v. Hayes* (1990), 139 Ill. 2d 89, 564 N.E.2d 803), it does not apply in this case. There was no criminal proceeding pending against defendant at the time of his McKone trial testimony. He was merely a witness in the McKone case. We also reject defendant's argument that he was deprived of his right against self-incrimination. He had already pleaded guilty to criminal drug conspiracy and was serving his sentence at the time of his McKone trial testimony. In addition, his plea agreement provided that he would testify against McKone. There is no suggestion in the record that the State could have charged defendant with another crime based upon his anticipated McKone trial testimony. He had thus waived his right against self-incrimination. See *People v. Goodwin* (1986), 148 Ill. App. 3d 56, 60-61, 499 N.E.2d 119, 122.

Defendant next argues that the evidence was insufficient to convict him of perjury. He contends his statements were merely different, not contradictory. A criminal conviction will not be reversed on appeal unless the evidence is so improbable or unsatisfactory that it raises a reasonable doubt as to the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276.) The relevant question is not whether the reviewing court believes that defendant is guilty beyond a reasonable doubt but whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

The offense of perjury is defined by sections 32—2(a) and (b) of

the Criminal Code of 1961 (Code) (720 ILCS 5/32—2(a),(b) (West 1992)) as follows:

"Perjury. (a) A person commits perjury when, under oath or affirmation, in a proceeding or in any other matter where by law such oath or affirmation is required, he makes a false statement, material to the issue or point in question, which he does not believe to be true.

(b) Proof of Falsity.

An indictment or information for perjury alleging that the offender, under oath, has made contradictory statements, material to the issue or point in question, in the same or in different proceedings, where such oath or affirmation is required, need not specify which statement is false. At the trial, the prosecution need not establish which statement is false."

■ Defendant believes the prosecutor inadequately posed the questions at the McKone trial because he did not ask the same questions he did at the grand jury proceeding. For example, defendant points out that he was asked before the grand jury whether he had spoken with McKone prior to November 21, 1991, about supplying defendant with cocaine, to which defendant answered "yes." At the McKone trial, defendant was asked whether he remembered or recalled speaking with McKone, to which defendant answered that he did not remember. He also points out that the other questions he was asked at the McKone trial focused on his memory of events or of his grand jury testimony. He also complains that the testimony used to convict him was lifted out of context. By definition, contradictory statements cannot both be true. Thus, where there are two contradictory statements made under oath, one of them is false; proof that a person had made a contradictory statement proves, of itself without the aid of any presumption, that the person has made a false statement. (*People v. Ricker* (1970), 45 Ill. 2d 562, 565, 262 N.E.2d 456, 458.) We also note that a statement of belief or opinion can serve as the basis for a charge of perjury, where the witness had no such belief or opinion. (*People v. Watson* (1980), 85 Ill. App. 3d 649, 652, 406 N.E.2d 1148, 1151.) We hold the evidence was sufficient to convict defendant. The jury may have found defendant's memory to be selective, since he had no difficulty remembering things that happened around the same time period not relating directly to McKone, yet his memory as to McKone's involvement was fuzzy.

Defendant's next argument is that the trial court erred in instructing the jury. The definitional instruction given by the trial court stated that a person commits perjury when he knowingly makes contradictory statements under oath. This instruction was based

upon Illinois Pattern Jury Instructions, Criminal, No. 22.03 (2d ed. 1981) (hereinafter IPI Criminal 2d). The issues instruction given was based upon IPI Criminal 2d No. 22.04 and related to the making of contradictory statements. Defendant objected to these instructions and tendered others which were refused by the court. The definitional instruction tendered was based upon IPI Criminal 2d No. 22.01, and the issues instruction tendered was based upon IPI Criminal 2d No. 22.02. These instructions relate to the falsity of the alleged perjurious statements and the defendant's knowledge thereof. Defendant notes the charge in the indictment against him alleged he did not believe the alleged perjurious statements to be true and argues that the trial court effectively allowed the charge to be amended by the jury instructions which omitted the element of defendant's knowledge of falsity.

Knowledge of the falsity of the statement made at the time it was made is an essential element of the crime of perjury. (*People v. Taylor* (1972), 6 Ill. App. 3d 961, 963, 286 N.E.2d 122, 124.) As the court stated in *People v. Penn* (1988), 177 Ill. App. 3d 179, 183, 533 N.E.2d 383, 385:

"Paragraph (b) [of section 32—2 of the Code] merely provides a method of proving perjury as defined in paragraph (a). Under paragraph (b), proof of contradictory statements made under the circumstances mentioned in that paragraph is proof of all the elements of perjury as defined in paragraph (a). Paragraph (b) does not eliminate an element of proof, but merely provides an alternative method of proving an element of the offense. That the defendant knew the false statement was not true at the time of its utterance must still be proved; paragraph (b) merely provides that it may be proved by a rebuttable presumption arising from proof of other facts."

In *Ricker*, the supreme court upheld the constitutionality of section 32—2(b) of the Code against an argument that it created an unconstitutional presumption of guilt. The court noted that the only presumption contained in section 32—2(b) is that the defendant did not believe both statements to be true. The court found this presumption to be reasonable, since the evidence of a valid reason for the contradictory statements was more readily available to the defense than to the State. Thus, the defendant only has the burden of going forward with the evidence once the contradictory statements are shown. *Ricker*, 45 Ill. 2d at 565, 262 N.E.2d at 458.

●3 Contrary to defendant's argument, the State was not allowed to prove its case without showing defendant's knowledge of falsity. The instructions required the jury to find that defendant knew he

was making contradictory statements. Had the jury not found that he made the statements knowingly, it would have been required to acquit him. The trial court did not err in giving the instructions.

Defendant's last argument is that his sentence is excessive and the trial court failed to exercise its discretion because it misunderstood the law in concluding that a consecutive prison sentence was required. Defendant's sentence was controlled by section 5—8—4(f) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5—8—4(f) (West 1992)), which provides that a sentence of an offender committed to the Department of Corrections (DOC) at the time of the commission of the offense must be served consecutive to the sentence under which the offender is held by DOC. We note that perjury is a probationable offense (720 ILCS 5/32—2(e) (West 1992); 730 ILCS 5/5—6—2(b)(2) (West 1992)), and that a prison sentence of two to five years is also authorized (730 ILCS 5/5—8—1(a)(6) (West 1992)).

A sentence within the statutory limits will not be disturbed on review absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.) However, it has been held that where the trial judge imposed a certain sentence due to a misapprehension of the applicable law, remandment for resentencing is required. See *People v. Athey* (1976), 43 Ill. App. 3d 261, 266, 356 N.E.2d 1332, 1336; *People v. Brooks* (1977), 50 Ill. App. 3d 4, 8, 364 N.E.2d 994, 997.

We reject defendant's argument that the trial court mistakenly believed that probation was not a sentencing option. Defense counsel specifically brought to the court's attention the possibility of probation and, indeed, a consecutive sentence of probation could have been imposed. (See *People v. Jocelyn* (1989), 181 Ill. App. 3d 774, 537 N.E.2d 1086.) However, a reading of the court's comments at the sentencing hearing shows that the court believed a prison sentence should be imposed, although it would have preferred to give defendant a concurrent sentence. The court's comments did not indicate that it believed probation was not a sentencing option. Under the statute, defendant's prison sentence must be consecutive. We note he has not challenged the length of the sentence.

Accordingly, defendant's conviction and sentence are affirmed.

Affirmed.

COOK and McCULLOUGH, JJ., concur.