2021 IL App (2d) 200496-U
No. 2-20-0496
Order filed November 30, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | No. 15-CF-881 15-CF-882 15-CF-883 |
| | ) | |
| CHARLES S. DeHAAN, | ) ) | Honorable John S. Lowry, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Consecutive sentences were not an abuse of discretion where the record supported the trial court's finding that such sentences were necessary to protect the public from defendant, a physician, who sexually abused multiple elderly and disabled patients.  The cause was remanded for the trial court to exercise its discretion to decide whether the sentences should be concurrent or consecutive to a federal sentence that defendant was serving when sentenced on the state charges.

¶ 2    Defendant, Charles S. DeHaan, appeals his consecutive sentences for three counts of

aggravated battery (720 ILCS 5/12-3.05(d)(2) (West 2012)).  When defendant was sentenced on

these convictions, he was serving a federal prison sentence.  He contends that (1) the trial court

abused its discretion by running his aggravated-battery sentences consecutively to one another, and (2) his counsel was ineffective for agreeing that the state sentences must run consecutively to the federal sentence. We affirm the imposition of consecutive sentences on the state convictions. However, we vacate that part of the sentencing order requiring the state sentences to run consecutively to the federal sentence. We remand for the trial court to determine whether the state sentences should be consecutive or concurrent to the federal sentence.

¶ 3                                 I. BACKGROUND

¶ 4     On April 15, 2015, defendant, a medical doctor, was charged with four counts of aggravated criminal sexual abuse of a physically handicapped person (*id.* § 11-1.60(a)(4)) and four counts of criminal sexual abuse (*id.* § 11-1.50(a)(2)). In August 2018, he was charged with three counts of aggravated battery. The latter counts alleged that defendant knowingly made contact of an insulting or provoking nature by touching the breasts of L.F.S., S.P.P., and S.L.L., knowing that L.F.S. was handicapped and that S.P.P. and S.L.L. were over 60 years old.

¶ 5     In August 2018, defendant pleaded guilty to the aggravated battery charges, and the other charges were dismissed. The factual basis for the plea showed that the victims were defendant's patients. L.F.S. was a disabled woman who reported that defendant had touched her breast. S.P.P. and S.L.L. each resided in an assisted living facility and reported that defendant touched their breasts without permission. At the time of the plea, defendant was serving a nine-year federal sentence after pleading guilty to two counts of Medicare fraud. The State told the court that any sentence imposed in the state case will be "mandatory consecutive" to the federal sentence, per the federal trial court's order. Defense counsel did not object. Sentencing was delayed until June 2019 because defendant suffered a stroke.

¶ 6    Sentencing in the federal case had taken place in April 2017.  The trial court sentenced defendant based only on the fraud charges, leaving it to the state court to determine the sexual misconduct charges.  The federal court specifically stated:

> "As the disposition in this case will be separated from the dispositions in the pending state criminal cases, the court finds that it is appropriate under the authority set forth in the Supreme Court's opinion of *Setser vs. United States*, 566 U.S. 231 [(2012)], to order that the sentence imposed in this case will run consecutively with any sentence that may later be imposed in the state court for any of the pending criminal charges relating to the sexual misconduct.
>
> So the sexual misconduct will be litigated in the state court.  He will be assigned a punishment for those charges. This case is separate. He will be assigned punishment for the Medicare fraud, but the punishment won't be concurrent. He won't be serving any prison sentence or jail sentence at the same time for both charges.
>
> Under the framework that I am using, the sentence that is imposed in this case will have no bearing on the sentence that will [be] imposed in the state court in the event the defendant is convicted of one or more of the pending charges.  By ordering my sentence to be consecutive to any subsequent state court sentence, the court is taking into account the fact that the guideline range in this case does not punish the defendant in any way for the alleged sexual misconduct as the government argues in its motion, but it also allows for those charges to be fully litigated before a determination is made on what sentence will be most appropriate based on the sexual misconduct."

¶ 7    At the June 2019 sentencing in the state case, the State again asserted that the federal court ordered that any state sentences would be consecutive to the federal sentence.  The trial court

stated, "[T]hat's my understanding, as well," and asked, "Defense agrees?" Defense counsel answered, "Yes."

¶ 8        In support of its recommended sentence, the State submitted transcripts of the victims' testimony in the federal case, their police statements, and their victim impact statements. S.L.L. wrote in her impact statement that defendant came to her apartment at an assisted living center to fit her for a power wheelchair. Defendant sexually abused her and asked her to perform sex acts. Defendant told her that, if she told anyone, no one would believe her. After she moved to other locations, she found that defendant was the physician for those places. She refused to see him and moved to a private apartment. She provided similar testimony in the federal case. In her police statement, she wrote that defendant wore scrubs but no underwear and that his penis was visible through his scrubs. She wrote that defendant fondled her legs, buttocks, and breasts and then exposed himself to her.

¶ 9        L.F.S. wrote in her impact statement that defendant provided poor medical care and that he "played with [her] breast every month" in her apartment. In federal court, she testified that, during every visit, defendant "[p]layed with [her] breast" and had her "shak[e]" his penis. In her police statement, she wrote that defendant fondled her breasts, exposed himself, and asked her to rub his penis. He would also masturbate and put his semen in a bag, which he would then put in his pocket.

¶ 10      S.P.P. wrote in her police statement that defendant fondled her breasts. She wrote in her impact statement about the psychological difficulties she faced after being a victim.

¶ 11      The State presented evidence that defendant sexually abused other elderly or disabled patients. Some of these victims testified in the federal case. For instance, J.S., who was 63 and disabled, testified in a deposition for the federal case that defendant sexually abused her every

three to four weeks over three years, and he made visits that were not medically scheduled. On one occasion, defendant came to examine her after she reported having a vaginal cyst. Defendant did not wear gloves and refused to remove his finger from her vagina when she complained of pain. He then masturbated in front of her. He was not wearing underwear under his medical scrubs. Defendant wiped his semen down her mouth and told her, " 'That's my love for you.' "

¶ 12    J.S. testified to multiple other acts of sexual abuse. Defendant would place his ear on her chest rather than use a stethoscope, fondle her breasts under the guise of a breast exam, lick or bite her breasts, masturbate in front of her, and force her to assist him while masturbating. On one occasion, defendant tied his penis up against his abdomen using his scrub ties and asked J.S., "Aren't I clever?" J.S. also testified that defendant would call her on the phone and "talk dirty." When J.S. hung up, defendant would call back repeatedly until she unhooked her phone line. Defendant repeatedly threatened J.S. not to tell anyone, stating that no one would believe her.

¶ 13    The State presented police statements from three other women alleging that defendant sexually abused them. The State also submitted documents relating to the suspension of defendant's medical license. These documents contained allegations of sexual abuse from multiple victims. Defendant was convicted in the federal case after submitting billing for over 400 patients that he never saw, some of whom were deceased when he claimed to have visited them. While on home confinement awaiting sentencing in the federal case, defendant left his home 67 times, claiming that he was performing public service at a church. That service could not be confirmed; defendant apparently forged a church member's name on a volunteer form. Defendant's bond in the federal case was later revoked.

¶ 14    Defendant presented letters in support of his good character and gave a statement in allocution. Defendant accepted responsibility for his crimes and apologized to his victims and his

family. He also spoke about his health following his stroke. Defense counsel asked for probation or, alternatively, that any sentences of incarceration be made concurrent.

¶ 15 The trial court discussed the mitigating and aggravating circumstances at length and sentenced defendant to three years' incarceration on each count, with the sentences to be served consecutively. The court cited section 5-8-4(c)(1) of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-4(c)(1) (West 2018)) and explained the basis for its decision, stating first that defendant preyed upon highly vulnerable victims who depended on home medical care. Second, the extent and duration of the criminal conduct were alarming. Third, defendant's conduct "was particularly egregious in terms of its audacity to invade the sanctity of his homebound patients' own homes to victimize them" in an "incredibly degrading" and "harmful" way. The court added:

> "Again, I recognize the future—in the future the defendant will not be authorized to provide medical care to patients. He has lost his medical license. Still the nature and extent of the defendant's criminal thinking attached to his pattern of criminal conduct leads the Court to find a consecutive sentence is necessary to protect the public."

Describing defendant as a "manipulative criminal" and a "predator," the court stated that defendant's ability to "set aside [his] reputable character" and engage in criminal activity made him a danger to the community. Defendant's motion to reconsider the sentence was denied, and he appeals.

¶ 16                                    II. ANALYSIS

¶ 17 Defendant first contends that the trial court abused its discretion in running the three state sentences consecutively to one another. He argues that, because of his advanced age, medical conditions, and loss of his medical license, he is unlikely to engage in further criminal conduct, making protection of the public unnecessary. We disagree.

¶ 18    Section 5-8-4(a) of the Code states:

"When an Illinois court (i) imposes multiple sentences of imprisonment on a defendant at the same time or (ii) imposes a sentence of imprisonment on a defendant who is already subject to a sentence of imprisonment imposed by an Illinois court, a court of another state, or a federal court, then the sentences shall run concurrently unless otherwise determined by the Illinois court under this Section." 730 ILCS 5/5-8-4(a) (West 2018).

¶ 19    Section 5-8-4(a) "establishes a presumption that sentences are to be concurrent unless the court makes an adequately grounded finding that consecutive sentences are necessary." *People v. Hoffman*, 2020 IL App (2d) 180853, ¶ 33. A court may impose consecutive sentences "[i]f, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is the opinion of the court that consecutive sentences are required to protect the public from further criminal conduct by the defendant." 730 ILCS 5/5-8-4(c)(1) (West 2018). In imposing consecutive sentences under section 5-8-4(c)(1), the court must set forth on the record the basis for doing so. *Id.* The court need not recite the language of section 5-8-4(c)(1), but the record must reflect its belief that consecutive sentences were necessary to protect the public. *People v. Buckner*, 2013 IL App (2d) 130083, ¶¶ 36-37. Because the trial court is in the best position to consider the defendant's credibility, demeanor, general moral character, mentality, social environment, and habits, its imposition of a consecutive sentence will not be reversed on appeal absent an abuse of discretion. *Id.* ¶ 36. If the record does not support the trial court's determination that consecutive sentences are necessary to protect the public, an abuse of discretion has occurred. *Id.* Discretionary consecutive sentences should be imposed sparingly. *People v. O'Neal*, 125 Ill. 2d 291, 298 (1988).

¶ 20    Although we recognize that discretionary consecutive sentences should be imposed sparingly, the record here shows that the trial court did not abuse its discretion in ordering consecutive sentences. The court specifically referred to the language of section 5-8-4(c)(1), noting that defendant's crimes were particularly egregious and thus necessitated consecutive sentences for the protection of the public. Defendant argues that, based on his age, medical conditions, and loss of his medical license, he will lack the opportunity to commit further crimes. But the record also shows that defendant engaged in significant predatory behavior and was willing to repeatedly disregard both the law and the terms of his federal bond. While perhaps defendant's opportunities to reoffend will be made more difficult by having less access to vulnerable victims, the record reflects that defendant is, as the trial court noted, a "manipulative criminal" and a "predator." The court's finding that defendant posed a continuing danger to the public was well supported. Thus, the court did not abuse its discretion in imposing consecutive sentences on the state convictions.

¶ 21    Defendant next argues that he was denied the effective assistance of counsel when his attorney agreed that the state sentences must run consecutively to the federal sentence. We agree.

¶ 22    To establish ineffective assistance of counsel, a defendant must show that (1) his counsel's representation fell below an objective standard of reasonableness and (2) but for counsel's errors, there is a reasonable probability that the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *People v. Griffin*, 148 Ill. 2d 45, 57 (1992).

¶ 23    As noted, section 5-8-4(a) of the Code provides in part that, when a court imposes a prison sentence on a defendant "who is already subject to a sentence of imprisonment imposed by an Illinois court, a court of another state, *or a federal court*, then the sentences shall run concurrently,

unless otherwise determined" by the court. (Emphasis added.) 730 ILCS 5/5-8-4(a) (West 2018). Thus, the default position of section 5-8-4(a) is that all Illinois state sentences will be concurrent to any sentence—state or federal—that the defendant is currently serving. *Id.* The only applicable exception to this default position is in section 5-8-4(c)(1), which permits the court in its discretion to impose consecutive sentences if the court finds that such sentencing is necessary to protect the public from further criminal conduct by the defendant. See *id.* § 5-8-4(c)(1); *People v. McKinney*, 2011 IL App (1st) 100317, ¶ 52.

¶ 24    As we previously noted, the trial court did not abuse its discretion in determining that the state sentences should be served consecutively to one another. However, the trial court did not exercise its discretion at all to determine whether the state sentences should be served consecutively to the federal sentence. Instead, the court accepted the State's position that it was mandatory, under the federal sentencing order, that the state sentences run consecutively to the federal sentence.

¶ 25    However, the State's position was erroneous. The federal court's order meant that time served on the state sentence would not be factored in calculating defendant's release date in the federal case. However, the federal order in no way obligated the state court to make its sentences consecutive to the federal sentence. Thus, the trial court had the discretion to make the state sentences concurrent to the federal sentence. Had the trial court done so, defendant would receive credit on his state sentence while serving the federal sentence, notwithstanding the federal order. The State and the trial court misunderstood state and federal comity, and defense counsel was ineffective for acquiescing. Had counsel argued that the trial court *did* have the discretion to run the state sentences concurrently to the federal sentence, the court would have been alerted to the need to exercise discretion in deciding the issue. As for the proper relief, we note that, where a

trial court imposes a certain sentence due to a misapprehension of the applicable law, remandment for resentencing is required. *People v. Kang*, 269 Ill. App. 3d 546, 553 (1995). Accordingly, we vacate the part of the sentencing order running the state sentences consecutively to the federal sentence, and we remand for a new sentencing hearing at which the trial court shall exercise its discretion to determine whether the state sentences should be concurrent or consecutive to the federal sentence.

¶ 26                                III. CONCLUSION

¶ 27     For the reasons stated, we affirm in part and vacated in part the judgment of the circuit court of Winnebago County. The cause is remanded for resentencing as directed.

¶ 28     Affirmed in part and vacated in part. Cause remanded with directions.